# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 12, 2010

No. 08-30538

Charles R. Fulbruge III
Clerk

KELVIN SCHEXNAYDER

Plaintiff–Appellee

v.

HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY

Defendant–Appellant

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:07-CV-00084

Before JOLLY, PRADO, and SOUTHWICK, Circuit Judges.

PRADO, Circuit Judge:

Kelvin Schexnayder sued Hartford Life and Accident Insurance Company ("Hartford") under the Employee Retirement Income Security Act of 1974 ("ERISA"), Pub. L. No. 93-406, 88 Stat. 829. Schexnayder asserted that Hartford wrongly denied him disability benefits. The district court granted summary judgment to Schexnayder, holding that Hartford abused its discretion in denying Schexnayder's claim. In addition, the district court granted Schexnayder attorneys' fees. For the following reasons, we AFFIRM the district court's order granting summary judgment to Schexnayder, but REVERSE the district court's order granting Schexnayder attorneys' fees.

No. 08-30538

## I. FACTUAL AND PROCEDURAL BACKGROUND

Schexnayder worked for CF Industries as a chemical operator from February 1981 until June 2003, when severe back and leg pain forced him to cease working. Although doctors performed back surgery on Schexnayder in 2003, he continues to suffer from recurrent pain in his back and extremities, rendering him at least partially disabled.

Schexnayder was covered by a Long Term Disability Insurance Plan (the "Plan") sponsored by CF Industries for its employees. The Plan was funded by a group long-term disability insurance policy issued by Continental Casualty Co. Pursuant to an endorsement, Hartford Life Group Insurance Co. became the underwriting company for this policy.[1] In addition to funding the benefit plan, Hartford had sole discretionary authority to determine eligibility for benefits under the Plan and to interpret its terms and provisions.

After Schexnayder ceased working and filed for benefits under the Plan, he was entitled to receive up to twenty-four months of disability payments if Hartford determined that he was unable to perform his regular occupation. After this initial period, Schexnayder was entitled to disability benefits only if he was unable to engage in any occupation for which he was or became qualified. Concluding that Schexnayder was disabled from his regular occupation as a chemical operator, Hartford paid Schexnayder disability benefits under the Plan for his initial, twenty-four month "regular occupation" period. During this period, the Social Security Administration (the "SSA") determined that Schexnayder was totally disabled, meaning that he could not perform *any* work, and it authorized him to receive disability payments. After receiving this award, Schexnayder promptly reimbursed Hartford for the disability payments he had received through the SSA.

---

[1] Hartford Life Group Insurance Co. eventually merged into Hartford Life and Accident Insurance Co., the Appellant in this matter.

No. 08-30538

In November 2004, Hartford notified Schexnayder that his "regular occupation" payments would end in November 2005 and that the information it had received from his doctors did not support a finding that he remained disabled from working in any occupation. Schexnayder disputed this determination and provided additional medical documentation in an effort to show that he was totally disabled. Hartford decided to extend Schexnayder's benefits beyond November 2005 while it continued to consider his disability claim. After further review, Hartford informed Schexnayder that as of January 31, 2006, he would receive no further benefits under the Plan because the medical and vocational information it had examined did not support the conclusion that Schexnayder remained disabled from any occupation. Schexnayder appealed this decision through Hartford's internal appeals process. Accordingly, Hartford conducted a final review of the evidence. In June 2006, Hartford informed Schexnayder that it would uphold its decision to terminate benefits because Schexnayder was functionally capable of performing a number of occupations requiring only a sedentary level of exertion.

Schexnayder then filed suit in federal court seeking review of Hartford's decision to terminate his disability benefits. In August 2007, the parties submitted cross motions for summary judgment. The district court granted Schexnayder's motion, concluding that Hartford abused its discretion in terminating Schexnayder's disability benefits. In addition to reinstating Schexnayder's benefits under the Plan, the court ordered Hartford to pay past long-term disability benefits retroactive to January 31, 2006 (including pre- and post-judgment interest), and Schexnayder's attorneys' fees and costs. The district court entered a final judgment and Hartford timely appealed.

3

No. 08-30538

## II.  JURISDICTION AND STANDARD OF REVIEW

We review the district court's grant of summary judgment in an ERISA case *de novo*, applying the same standard as the district court. *Wade v. Hewlett-Packard Dev. Co. LP Short Term Disability Plan*, 493 F.3d 533, 537 (5th Cir. 2007). Because the Plan gave Hartford discretionary authority to determine eligibility for benefits as well as to construe the Plan's terms, we review Hartford's denial of benefits for an abuse of discretion. *See Corry v. Liberty Life Assurance Co. of Boston*, 499 F.3d 389, 397 (5th Cir. 2007); *see also Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). "A plan administrator abuses its discretion where the decision is not based on evidence, even if disputable, that clearly supports the basis for its denial." *Holland v. Int'l Paper Co. Retirement Plan*, 576 F.3d 240, 246 (5th Cir. 2009) (internal quotation marks and citations omitted). "If the plan fiduciary's decision is supported by substantial evidence and is not arbitrary or capricious, it must prevail." *Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004).

We similarly review a district court's award of attorneys' fees in an ERISA case for an abuse of discretion. *Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich.*, 97 F.3d 822, 832 (5th Cir. 1996).

## III.  DISCUSSION

### A.    Benefits Determination

In reviewing the plan administrator's decision, we "take into account . . . several different considerations." *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2351 (2008). These factors are case-specific and must be weighed together before determining whether a plan administrator abused its discretion in denying benefits. *Id.* Any one factor may "act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance." *Id.*

4

No. 08-30538

The interaction between the factors and the substantial evidence test is a relatively new issue after the Supreme Court's decision in *Glenn*. We have considered the interplay in only one prior published decision—*Holland*—in which we found that the conflict of interest was a minimal factor and that the evidence was more than sufficient to support the denial of benefits. 576 F.3d at 251. However, a reviewing court may give more weight to a conflict of interest, where the circumstances surrounding the plan administrator's decision suggest "procedural unreasonableness." *Glenn*, 128 S. Ct. at 2352. Applying *Glenn*'s "combination-of-factors" method of review, we give more weight to the conflict of interest because Hartford's decision here suggests procedural unreasonableness.

### 1.    Medical Evidence

Schexnayder suffers from chronic degenerative disc disease, carpel tunnel syndrome, and spinal stenosis. Schexnayder and Hartford's physicians, however, disagree on the level of Schexnayder's pain and how it affects his ability to perform full-time work. The Supreme Court has held that "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician," but a plan administrator "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of treating physicians." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003).

Although they equivocated during Hartford's investigation, by 2005, three of Schexnayder's treating physicians found him incapable of performing sedentary-level work. Schexnayder's treating physicians found that Schexnayder's physical conditions caused him debilitating pain. Moreover, the medical evidence showed that Schexnayder had significant spinal stenosis and elevated spinal fluid protein, both of which support Schexnayder's complaints of pain.

5

No. 08-30538

However, Hartford's reviewing physicians concluded that Schexnayder was capable of employment in a full-time, light-demand, or sedentary occupation.[2] Hartford credited these conclusions as well as the results of a Functional Capacity Evaluation ("FCE"), which indicated that Schexnayder was capable of performing light sedentary work.    In addition, Hartford found that Schexnayder's subjective complaints of pain, relied upon by the treating physicians and noted in the FCE report, were "not consistent" with the objective medical evidence.

The administrative record reveals that Hartford was presented with conflicting medical evidence on the extent of Schexnayder's disability, or more specifically, whether he was capable of full-time, sedentary work.  Ultimately, Hartford credited its physicians who found that Schexnayder's pain would not prevent him from returning to work.  Although Hartford based its decision on substantial evidence, we must consider other factors under *Glenn*, such as the conflict of interest and Hartford's treatment of the SSA award.

## 2.    Conflict of Interest

In *Glenn*, the Supreme Court stated that a structural conflict of interest created by the plan administrator's dual role in making benefits determinations and funding the benefit plan "should be taken into account on judicial review of a discretionary benefit determination."  *Glenn*, 128 S. Ct. at 2350 (internal quotation marks and citation omitted).  The Court held that a conflict "should be weighed as a factor in determining whether there is an abuse of discretion." *Id*.  "[C]onflicts are but one factor among many that a reviewing judge must take into account." *Id*. at 2351.  The weight that this conflict will have relative to

---

[2] Schexnayder argues that we should give little weight to Hartford's reviewing physicians, because they are not specialists in the area of his disability and did not physically examine him.  However, given their backgrounds, we find that the reviewing physicians had the "appropriate training and experience in the field of medicine involved in the medical judgment." *See* 29 C.F.R. § 2560.503-1(h)(3)(iii).

6

other factors changes, however, depending upon the circumstances of a particular case.  *Id*. at 2350–51.  For example, a conflict of interest

> should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration.  It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits.

*Id*. at 2351.

In *Holland*, the plan administrator established a trust to pay benefits to which it made periodic, irrevocable, and non-reversionary payments.  576 F.3d at 248–49.  Therefore, "a decision to pay benefits [did] not directly affect International Paper's bottom-line."  *Id*. at 249.  We found that the "the creation of the trust diminishe[d], but d[id] not entirely negate, the impact of that conflict."  *Id*. (citation omitted).  The plan also took further steps to minimize the conflict, such as requiring independent medical professionals to affirm that they had no conflict of interest and that their compensation was not dependant on the outcome of the case.  *Id*.  We therefore held that the "conflict [was] not a significant factor."  *Id*.

In this case, Hartford both administered and paid for the Plan.  Thus, a decision to pay benefits affects Hartford's bottom-line, because benefits payments come directly from Hartford.  As the district court noted, "Hartford, as the administrator and insurer of the disability plan, potentially benefits from every denied claim."  *Schexnayder v. CF Indus. Long Term Disability Plan*, 553 F. Supp. 2d 658, 663–64 (M.D. La. 2008).  Hartford did not take any precautions to avoid or minimize this conflict, such as "walling off claims administrators

from those interested in firm finances or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits." *Glenn*, 128 S. Ct. at 2351. However, as discussed above, the weight given to the conflict of interest depends partly on the other circumstances surrounding Hartford's decision. In this case, because the circumstances suggest procedural unreasonableness, we believe that Hartford's financial bias may have played a part in its decision, and therefore the conflict is a more significant factor.

### 3.    Social Security Administration

Failure to address a contrary SSA award can suggest "procedural unreasonableness" in a plan administrator's decision. *See id.* at 2352. This procedural unreasonableness is important in its own right and also "justifie[s] the court in giving more weight to the conflict." *Id.* "[A]n ERISA plan administrator's failure to address the Social Security Administration's finding that the claimant was 'totally disabled' is yet another factor that can render the denial of further long-term disability benefits arbitrary and capricious." *Glenn v. MetLife* (*Glenn I*), 461 F.3d 660, 669 (6th Cir. 2006), *aff'd*, *Glenn*, 128 S. Ct at 2343.

The SSA determined that Schexnayder is fully disabled and unable to perform any work, but Hartford did not address the SSA award in any of its denial letters. Because Hartford failed to acknowledge an agency determination that was in direct conflict with its own determination,[3] its decision was procedurally unreasonable. We agree with the Sixth Circuit's conclusion in *Glenn I*, that "[h]aving benefitted financially from the government's

---

[3] We do not require Hartford to give any particular weight to the contrary findings; indeed, Hartford could have simply acknowledged the award and concluded that, based on the medical evidence before it, the evidence supporting denial was more credible. It is the lack of *any* acknowledgment which leads us to conclude that Hartford's decision was procedurally unreasonable and suggests that it failed to consider all relevant evidence.

determination that [the plaintiff] was totally disabled" Hartford should have at least acknowledged the SSA award. *Id*. at 669.

This procedural unreasonableness "justifie[s] the court in giving more weight to [Hartford's] conflict" because it suggests financial bias may have affected Hartford's decision. *Glenn*, 128 S. Ct. at 2352. We also consider the failure to address the SSA's decision as a factor in its own right. Although substantial evidence supported Hartford's decision, the method by which it made the decision was unreasonable, and the conflict, because it is more important under the circumstances, acts as a tiebreaker for us to conclude that Hartford abused its discretion.

## B.    Attorneys' Fees

Under ERISA, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). In deciding whether to award attorneys' fees to a particular party,

> a court should consider such factors as the following: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merit of the parties' positions. No one of these factors is necessarily decisive, and some may not be appropriate in a given case, but together they are the nuclei of concerns that a court should address in applying section [1132(g)(1)].

*Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1980) (citations and footnote omitted). The district court held that the first *Bowen* factor weighed in favor of assessing attorneys' fees against Hartford, because it found that Hartford acted arbitrarily and capriciously when it ignored evidence of Schexnayder's disability from his treating physicians in favor of evidence that

9

benefitted Hartford financially. The district court also awarded attorneys' fees in an effort to deter Hartford from acting in a similar manner with other members of the Plan.

A finding of bad faith requires more than simply establishing that there was a conflict of interest. *See Carolina Care Plan Inc. v. McKenzie*, 467 F.3d 383, 390 (4th Cir. 2006) (holding that although the record showed that the plan administrator's decision furthered its financial interest, the first factor in the *Bowen* analysis did not weigh against the plan administrator absent evidence of bad faith), *abrogated on other grounds by Glenn*, 128 S. Ct. at 2343. Instead, a plaintiff must prove that the conflict of interest actually and improperly motivated the decision. This higher standard separates those cases in which a conflict of interest tips the scale in favor of reversing the plan administrator's benefits determination from those cases in which the plan administrator's bad faith clearly motivated the decision. If, for example, a plaintiff shows that the insurer provided additional compensation for plan administrators who denied claims or that the insurer has a history of biased claims, then the plaintiff will have made an adequate showing of bad faith that would entitle him to attorneys' fees.[4]

We find that the legal questions in this case are much closer than the district court credited, and that the district court therefore abused its discretion in assessing attorneys' fees against Hartford. First, we find that there is no evidence that Hartford acted in bad faith in denying Schexnayder's claim. Hartford sought to reconcile conflicting medical evidence by actively investigating Schexnayder's claim. Although we find that Hartford's method of deciding Schexnayder's claim was unreasonable, there was substantial evidence

---

[4] These examples are not meant to be exhaustive. They merely illustrate the types of findings that would lead a district court to hold that the plan administrator acted in bad faith.

to support its conclusion. Furthermore, there is no direct evidence that the conflict consciously motivated Hartford's decision.

Although Hartford has the ability to satisfy an award of attorneys' fees (*Bowen* factor two), and such an award may deter it from allowing its conflict of interest to factor into its benefits determinations in the future (*Bowen* factor three), we find that *Bowen* factors four and five weigh in favor of Hartford. Schexnayder has not purported to benefit anyone other than himself by this litigation or to resolve a significant legal issue. Most importantly, although Schexnayder has prevailed, both parties demonstrated merit in their claims. Accordingly, we reverse the district court's determination that Schexnayder was entitled to attorneys' fees.

## III. CONCLUSION

We AFFIRM the district court's holding that Hartford abused its discretion in its benefits determination, but REVERSE the district court's award of attorneys' fees.

AFFIRMED in part, REVERSED in part.