# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 27, 2012

No. 11-50500
Summary Calendar

Lyle W. Cayce
Clerk

JOHN JURASIN,

Plaintiff-Appellant

v.

GHS PROPERTY & CASUALTY INSURANCE COMPANY; CAPROCK
CLAIMS MANAGEMENT, L.L.C.; ED BRADY, as Plan Administrator;
DILLON RESOURCES, INC., Occupational Injury Benefit Plan,

Defendants-Appellees

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:09-CV-562

Before GARZA, SOUTHWICK and HAYNES, Circuit Judges.

PER CURIAM:[*]

John Jurasin seeks long-term disability benefits for a neck condition he claims resulted from an accident during work. His employer provides an Occupational Injury Benefit plan subject to the Employee Retirement Income Security Act (ERISA). The plan is administered by Caprock Claims Management and funded with an insurance policy issued by GHS Property &

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-50500

Casualty. Caprock informed Jurasin his neck condition was not compensable. A review board also denied his claim. Jurasin brought suit, but the district court granted summary judgment to the defendants. We AFFIRM.

## BACKGROUND

On January 21, 2008, while removing a tarp from his tractor-trailer, John Jurasin slipped on some mud. Although he avoided a fall by grasping a rail, he claimed to have heard a "pop." Shortly thereafter, he sought treatment for pain to his "right back and right abdominal wall." After some improvement, Jurasin returned to work with light-duty restrictions. By February 1, he resumed unrestricted assignments after having completed physical therapy.

Jurasin complained of renewed lower thoracic back pain that March and was referred to a pain management specialist. He received a cortisone shot due to a knot in his back. Complications ensued. Jurasin developed an abscess which required surgery. After a hospital stay, he received home health care. In July, an orthopedic surgeon, Dr. Dar, suggested conditioning and rehabilitation, known as work hardening, and he sent Jurasin to another pain manager. Dr. Dar reviewed MRI films and made what he termed an "incidental finding" that Jurasin's C6-7 cervical disc in the neck was herniated; Dar further noted that Jurasin was not experiencing neck discomfort.

An independent medical examination on August 21 found that Jurasin's C6-7 herniation was not compressing his spinal cord and that his cervical spine's range of motion was unrestricted. Several other doctors specializing in orthopedics and neurology expressed the opinion that his neck condition was chronic and preexisting, not traceable to Jurasin's injury at work. On November 18, 2008, Caprock informed Jurasin that it had determined, after consideration by a Medical Review Officer, that his cervical condition was not compensable. Coverage was limited to the injury to his thoracic and lumbar spine. For the

No. 11-50500

compensable injuries, the plan ultimately paid over $32,000 in medical expenses and $17,000 in disability benefits.

On February 4, 2009, Jurasin was examined by Dr. Garza-Vale. This doctor found the neck injury was preexisting but that Jurasin's accident had aggravated the injury. His findings were submitted to Caprock. After reviewing the medical evidence, including the submission from Dr. Garza-Vale, Caprock again informed Jurasin, on March 20, 2009, that the only compensable injury was to his back. Ten days later, Dr. Garza-Vale again examined Jurasin; a letter reiterating his view more emphatically was furnished to the GHS appeals board. The appeals board denied Jurasin's claim on April 17, 2009.

Pursuant to ERISA's civil enforcement provision, Jurasin filed suit challenging the denial of benefits for his cervical condition. *See* 29 U.S.C. § 1132(a)(1)(B). The court granted summary judgment for the plan defendants, Caprock and GHS. Jurasin timely appealed. In addition to contesting the coverage decision, Jurasin claims that the district court erred in striking parts of his own affidavit, as well as one from Dr. Garza-Vale.

## DISCUSSION

We review the grant of summary judgment *de novo* and apply the same standard as the district court. *Schexnayder v. Hartford Life and Accident Ins. Co.*, 600 F.3d 465, 468 (5th Cir. 2010). When, as here, the administrator of an ERISA plan has discretion to determine eligibility and interpret plan terms, the plan's denial is reviewed for an abuse of discretion. *Id.* "A plan administrator abuses its discretion where the decision is not based on evidence, even if disputable, that clearly supports the basis for its denial." *Id.* (quotation marks and citation omitted). We are not "to engage in full review of the motivations behind every plan administrator's discretionary decisions." *Crosby v. La. Health Serv. and Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011) (quotation marks and citation omitted). Our review is to "assure that the administrator's decision

3

No. 11-50500

fall[s] somewhere on a continuum of reasonableness – even if on the low end." *Corry v. Liberty Life Assurance Co. of Boston*, 499 F.3d 389, 398 (5th Cir. 2007) (quotation marks and citation omitted).

We employ a two-step inquiry as to ERISA plan decisions. We first decide if the determination by the plan administrator was legally correct, and if it is, there is no abuse of discretion. *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 246 n.2 (5th Cir. 2009). If the determination is not legally correct, we then determine whether the administrator's decision was an abuse of discretion. *Id.* Because Jurasin does not assert any improper plan interpretation, we exercise our discretion to bypass the first step here. *Id.*

## I.    *Conflict of Interest*

Jurasin alleges two sources of conflict that "should have tilted the [district] court's review toward a less-than-deferential standard." Though Jurasin refers to some of our earlier caselaw about a sliding scale of review, this Court no longer employs that method. *Holland*, 576 F.3d at 247-248 & n.3 (discussing *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008)). It is fair to say that "conflicts are but one factor among many," and the "specific facts of the conflict will dictate its importance." *Id.* at 247-48.

Both his arguments relate to a conflict of interest rooted in Caprock's dual role as the evaluator and the payor. *See, e.g.*, *Holland*, 576 F.3d at 248 n.3. We are required to take into account this dual role in reviewing a benefit determination. *Metro. Life*, 554 U.S. at 115. Jurasin claims bias stemming from the fact that the Medical Review Officer on whom Caprock relied for its November 2008 denial, Dr. Cunningham, was employed by Blue Cross and Blue Shield of Oklahoma, a division of the funding insurance company GHS. Jurasin's suggestion that Cunningham provided a dishonest medical assessment merely due to an attenuated employment relationship with GHS is too theoretical and speculative for us to entertain. *See Davis v. Unum Life Ins. Co.*

4

*of Am.*, 444 F.3d 569, 575-76 (7th Cir. 2006). There needs to be, for example, evidence that Cunningham had "some specific stake in the outcome of [Jurasin's] case, such as paying the doctors more" when claims were denied. *Id.* at 575.

Jurasin also claims an institutional-level conflict because the review board that processed his appeal was entirely composed of GHS employees. As noted, Caprock has been delegated the responsibility of independently deciding claims in the first instance. Conflict takes a "case-specific importance." *Metro. Life*, 554 U.S. at 117. Jurasin points to nothing suggesting a "likelihood that it affected the benefits decision," such as an allegation that this "insurance company administrator has a history of biased claims administration," misconduct by the board members, or the absence of firewalls and other internal operating procedures to insulate the decisionmakers. *Id.*

We agree with the district court that the unsupported assertions here are not evidence of a conflict. *Schexnayder*, 600 F.3d at 470.

## II.    *Abuse of Discretion*

Jurasin asserts the district court erred by striking portions of Dr. Garza-Vale's and Jurasin's affidavits. Evidence is irrelevant to the validity of the decision regarding coverage under the plan unless it "is in the administrative record, relates to how the administrator has interpreted the plan in the past, or would assist the court in understanding medical terms and procedures." *Crosby*, 647 F.3d at 263. The district court hewed carefully to this limitation, striking offending portions and admitting only those that assisted "the district court in understanding the medical terminology or practice."

The evidence required in support of the plan's decision is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004) (quotation marks and citation omitted). Jurasin's claim that the accident worsened his

condition has some evidentiary support, but that is not enough for reversal. *See id.* The physician who administered Jurasin's independent medical exam concluded Jurasin's neck condition was unrelated to the incident at work:

> In my opinion, the injuries sustained from the work injury of 1/21/08 are the abdominal wall strain, thoracic strain/sprain, and lumbar strain/sprain. . . . More likely than not, the herniated disc at C6-7 was a pre-existing herniation. There is no mention made in the medical records of any neck pain or arm pain that would date back to the 1/21/08 injury.

Jurasin relies on the opinion of Dr. Garza-Vale, who examined Jurasin only after he was denied coverage. That doctor agreed with the other doctors that the neck spur preexisted the injury at work. He believed, though, that the neck condition was traceable to work because it first became symptomatic after the accident. That evidence did not have to be accepted in light of contrary medical findings. Jurasin's argument that the review process ignored the contrary perspective of Dr. Garza-Vale is incorrect. When Caprock informed Jurasin on January 21, 2008 that it was upholding its earlier denial, it reported that it had reviewed Dr. Garza-Vale's findings.

In his brief, Jurasin also discusses the possibility of "referred pain," a phenomenon by which an injury at one location in the body manifests as pain elsewhere. That possibility is relevant as it could explain why Jurasin did not report any neck pain soon after the injury at work. That opinion was presented and not found to control over the other medical evidence. We do not weigh the evidence on our review, but only determine whether there is some evidence to support the administrator's decision. There is.

"We reach a finding of abuse of discretion only where the plan administrator acted arbitrarily or capriciously." *Holland*, 576 F.3d at 246 (quotation marks and citation omitted). That did not occur.

AFFIRMED.