# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 2, 2013

No. 12-60569
Summary Calendar

Lyle W. Cayce
Clerk

ALAN MCFADDEN,

Plaintiff-Appellant

v.

PRUDENTIAL INSURANCE COMPANY OF AMERICA, also known as
Insurance Company of Prudential; ENCOMPASS MECHANICAL SERVICES
SOUTHEAST,

Defendants-Appellees

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:11-CV-108

Before SMITH, PRADO, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Alan McFadden sustained an injury at work. He sought short- and long-term disability benefits through a benefits plan managed by Defendant-Appellee Prudential Insurance Company of America. Prudential denied McFadden's claims. The district court granted summary judgment for Prudential. We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-60569

1. Facts and Proceedings

Alan McFadden was a sheet metal worker for Encompass Mechanical Services Southeast ("EMSS"). As he repaired a roof in January 2002, a helicopter flew overhead. The resulting force caused McFadden to fall onto the roof. He claimed injuries to his neck, shoulder, back, hip, and leg.

McFadden applied for state workers' compensation benefits in 2002. The Mississippi Workers' Compensation Commission ("MWCC") found that McFadden lost 5% of his "wage-earning capacity" due to his work injuries. The MWCC awarded him benefits in 2005.

McFadden applied to the Social Security Administration ("SSA") for disability benefits in 2003. The SSA found McFadden to be totally disabled, and awarded him disability benefits in 2005.

McFadden applied for short-term disability benefits through EMSS' disability plan in 2008. The plan prohibited participants from receiving short-term disability benefits for "any disabilities caused by, contributed to by, or resulting from . . . ***occupational sickness or injury***." The plan defined "occupational sickness or injury" to mean "an injury arising out of, or in the course of, any work for wage or profit regardless of employer, or a sickness covered, with respect to such work, by any workers' compensation law, occupational disease law or similar law."

Prudential Insurance Company of America ("Prudential"), which managed and underwrote the plan, denied McFadden's claim for short-term benefits. Prudential explained in a January 2009 letter that the plan language prohibited participants from recovering benefits for "an injury arising out of, or in the course of, any work for wage or profit," and that McFadden's injury arose out of such work.

McFadden also applied for long-term disability benefits through the plan. The plan provided that a participant could receive long-term disability "when

No. 12-60569

Prudential determines" that "you are unable to perform the ***material and substantial duties*** of your ***regular occupation*** due to your ***sickness*** or ***injury***" and "you have a 20% or more loss in your ***indexed monthly earnings*** due to that ***sickness*** or ***injury***." The plan provided that a participant was "disabled" if, after 24 months of payments, "due to the same sickness or injury, [the participant is] unable to perform the duties of any ***gainful occupation*** for which [the participant is] reasonably fitted by education, training or experience."

Prudential denied McFadden's claim for long-term benefits. Prudential explained in an April 2009 letter: that McFadden "did not fall a significant distance"; that McFadden's "original description of the events does not suggest a mechanism expected to cause . . . severe pain and dysfunction"; that "follow-up physicians noted [McFadden] had a dramatic physical presentation and pain behaviors that did not match anatomic patterns of the injury and mechanism reported"; and that there were unexplainable "inconsistencies," including "notes reflecting [McFadden] had no strength deficit." Prudential noted that it reviewed medical record from more than twenty doctors, medical clinics, and treatment centers.

Prudential also rejected McFadden's administrative appeals. A Prudential appeals analyst explained that a physician who reviewed McFadden's files found that "[p]er many of the providers from 2002 to 2009, there is not significant evidence to support the claimant's pain complaints," and that "[s]everal providers have specifically stated that they are not able to correlate [McFadden's] pain complaints with either his report of the mechanism of injury or MRI and EMG findings." The appeals analyst indicated that Prudential had considered the SSA's disability finding.[1]

---

[1] Prudential also discussed the SSA disability finding in at least two phone calls with McFadden. In one of the calls, a Prudential employee apparently explained to McFadden that the SSA finding "is not what our opinion is based on."

No. 12-60569

The district court granted summary judgment for Prudential. The district court found that Prudential did not abuse its discretion in denying the short-term benefits because the "[short-term disability] plan did not cover on-the-job injuries." The district court found that Prudential did not abuse its discretion in denying long-term benefits because:

> The administrative record shows that Prudential's decision to deny [long-term disability] benefits was supported by substantial evidence and not arbitrary or capricious. McFadden's inability to work was not substantiated on the record. Within a month of the accident, one doctor noted McFadden's "dramatic" behavior and "bizarre" symptoms not rationally connected to his injuries, while another doctor found "moderate secondary gain behavior." . . . Instead, the common thread weaving through the record is multiple doctors' skepticism about McFadden's symptoms and purpose in seeking medical attention, related to their concern that he was attempting to feed an addiction to narcotics.

The district added that Prudential's denial of benefits was not "procedural[ly] unreasonable[ ]" because Prudential addressed the adverse SSA finding.

McFadden appeals. As in district court, he proceeds *pro se*.

## 2. Standard of Review

"This Court reviews a district court's grant of summary judgment de novo, applying the same standards as the district court." *Cooper v. Hewlett-Packard Co.*, 592 F.3d 645, 651 (5th Cir. 2009).

## 3. McFadden's Benefits Claims

"We limit our review of the interpretation of a benefits plan under [the Employee Retirement Income Security Act ("ERISA")] to the administrative record." *LifeCare Mgmt. Servs. LLC v. Ins. Mgmt. Adm'rs Inc.*, 703 F.3d 835, 841 (5th Cir. 2013). If, as the parties agree is the case here, the benefits plan gives the plan administrator "discretionary authority to determine eligibility for benefits under the plan or to interpret the plan's provisions, our standard of review is abuse of discretion." *Ellis v. Liberty Life Assurance Co. of Boston*, 394

No. 12-60569

F.3d 262, 269 (5th Cir. 2004) (internal quotation marks omitted). "A plan administrator abuses its discretion where the decision is not based on evidence, even if disputable, that clearly supports the basis for its denial." *Schexnayder v. Hartford Life & Acc. Ins. Co.*, 600 F.3d 465, 468 (5th Cir. 2010) (internal quotation marks omitted). If the plan administrator's "decision is supported by substantial evidence and is not arbitrary or capricious, it must prevail." *Id.* (internal quotation marks omitted). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ellis*, 394 F.3d at 273 (internal quotation marks omitted). In evaluating whether there is substantial evidence, "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003).

We consider whether the plan administrator has a conflict of interest in deciding if the administrator abused its discretion. *See Metro. Life Ins. Co. v. Glenn,* 554 U.S. 105, 117 (2008). A plan administrator has a conflict of interest if it "both evaluates claims for benefits and pays benefits claims." *Id.* at 112. However, "conflicts are but one factor among many that a reviewing judge must take into account." *Id.* at 116. "[A]ny one factor will act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance." *Id.* at 117.

We also consider whether the plan administrator acted "procedural[ly] unreasonable[ ]"—that is, if the administrator "fail[ed] to address the Social Security Administration's finding that the claimant was 'totally disabled.'" *Schexnayder*, 600 F.3d at 471 (quoting *Glenn v. MetLife*, 461 F.3d 660, 669 (6th Cir. 2006), *aff'd*, *Glenn*, 554 U.S. at 105). "This procedural unreasonableness is

5

No. 12-60569

important in its own right and also 'justifie[s] the court in giving more weight to the conflict.'" *Schexnayder*, 600 F.3d at 471 (quoting *Glenn*, 554 U.S. at 118).

*(a) Short-Term Disability Benefits*

Here, the district court correctly found that the plan administrator did not abuse its discretion in denying McFadden's claim for short-term disability benefits because the "plain meaning of the plan language," *Threadgill v. Prudential Sec. Grp., Inc.*, 145 F.3d 286, 292 (5th Cir. 1998), forecloses McFadden's claim. The benefits plan provided that it does not cover "any disabilities caused by . . . ***occupational*** . . . ***injury***"—that is, "an injury arising out of, or in the course of, any work for wage or profit regardless of employer." McFadden does not dispute, and the record shows, that his injury—caused when he fell while completing a paid roofing job for his employer—arose out of, and in the course of, such work.

McFadden argues for the first time on appeal that his injuries come within the plan's exception for occupational injuries of "partners or sole proprietors who cannot be covered by workers' compensation." To the extent that McFadden has not waived this argument, *see Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 877 (5th Cir. 2009), his injury does not come within the exception because, as he acknowledges, he received workers' compensation for the same injury.

*(b) Long-Term Disability Benefits*

Here, the district court correctly found that the plan administrator did not abuse its discretion in denying McFadden's claim for long-term disability benefits because there was "substantial evidence," *Ellis*, 394 F.3d at 273, to show that McFadden did not qualify for such benefits under the terms of the plan. The plan provided that McFadden could receive long-term benefits only if he was "unable to perform the ***material and substantial duties*** of [his] ***regular occupation*** due to [his] ***sickness*** or ***injury***." The plan administrator, in rejecting McFadden's disability claim, relied on medical records showing that

McFadden could perform the "material and substantial duties" of his job. For example, Dr. Anson Thaggard found during multiple examinations that McFadden "[d]id not fall from any height," that McFadden exhibited "some fairly bizarre symptoms that don't seem to match any specific dermatological or anatomical" patterns, and that it was "not really clear why he is having that sort of pain." Dr. David Collipp found that there were no "objective signs of physical abnormality, only lack of participation," that McFadden was "0 percent" impaired, and that McFadden could return to "Medium-Heavy to Heavy" work. Dr. Robert Smith found that McFadden "is taking far too much medication and should be weaned and gotten back to some kind of activity." Dr. Robert McGuire found that, as of September 2003, McFadden's herniated disc "had essentially resolved [itself]."

McFadden argues that there is substantial evidence supporting his disability claim because the medical records show that, for example, he suffered a herniated disc and received pain medication for a prolonged period. He contends that the district court "engaged in 'cherry picking' of the record and deferred to the 'cherry picking' of the record by Prudential." Yet under the deferential standard by which we review a plan administrator's denial, the question is not whether there is substantial evidence to support a disability claim, but whether there is substantial evidence to support the denial. *See Schexnayder*, 600 F.3d at 468; *Ellis*, 394 F.3d at 273. Given the findings by Drs. Thaggard, Collipp, Smith, and McGuire, discussed above, we cannot say that the record was devoid of substantial evidence to support Prudential's denial of benefits.

McFadden also argues that Prudential's denial conflicted with the SSA disability finding. He contends that Prudential at least should have explained why it departed from the SSA finding. However, a plan administrator only needs to "address" a contrary SSA award. *Schexnayder*, 600 F.3d at 471 (finding

that a plan administrator's denial was procedurally unreasonable because the administrator "failed to acknowledge an agency determination that was in direct conflict with its own determination"). Prudential discussed the SSA finding in multiple phone calls with McFadden, explaining in one call that the finding did not require Prudential to award McFadden benefits. Prudential also referenced the SSA finding in its letter denying McFadden's first administrative appeal. Given that Prudential addressed the SSA finding in multiple communications with McFadden, and that a plan administrator need not "give any particular weight to . . . contrary findings," *Schexnayder*, 600 F.3d at 471 n.3; *see Nord*, 538 U.S. at 834, Prudential's denial was not procedurally unreasonable.[2]

McFadden also argues that the district court should have given more weight to Prudential's structural conflict of interest. To the extent that such a conflict exists, it only "will act as a tiebreaker when the other factors are closely balanced." *Glenn,* 554 U.S. at 117. Given that, as discussed above, the other factors are not "closely balanced" because there is substantial evidence to support Prudential's denial, the alleged conflict does not require us to find that Prudential abused its discretion.[3]

In sum, the district court correctly found that Prudential did not abuse its discretion in denying McFadden's benefits claims because the plain language of the plan foreclosed McFadden's claim for short-term benefits, and because there

---

[2] McFadden also argues that Prudential should have addressed his workers' compensation award. However, McFadden does not cite, nor could we find, case law that imposes a duty on a plan administrator to consider such an award. Further, the state board's finding that McFadden was 5% disabled does not necessarily conflict with the plan administrator's finding that McFadden was not disabled under the terms of the plan.

[3] McFadden appears to argue that the district court erred by not allowing him to conduct discovery on Prudential's alleged conflict of interest. As discussed above, however, even if there were a conflict in this case, it would not change the outcome.

No. 12-60569

was substantial evidence supporting Prudential's denial of McFadden's claim for long-term benefits.[4]

4. Conclusion

Accordingly, we AFFIRM the district court's grant of summary judgment for Prudential.

---

[4] We also deny McFadden's claim for attorney's fees because he did not prevail in this action. *See LifeCare*, 703 F.3d at 846.