# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
January 8, 2015

Lyle W. Cayce
Clerk

No. 14-10052

JUDY B. KILLEN,

Plaintiff-Appellant,

v.

RELIANCE STANDARD LIFE INSURANCE COMPANY,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Texas

Before STEWART, Chief Judge, OWEN, Circuit Judge, and MORGAN, District Judge.[*]

CARL E. STEWART, Chief Judge:

Plaintiff-Appellant Judy Killen ("Killen") worked as an ultrasound technician for Covenant Health Systems ("Covenant") beginning in 2002. She ceased working in March 2009 due to neck, shoulder, and upper back pain. She was awarded 24 months of benefits from Covenant's long-term disability insurance plan, which Defendant-Appellee Reliance Standard Life Insurance Company ("Reliance Standard") administered. After three internal decisions by Reliance Standard rejecting Killen's request for extended long-term disability benefits, she brought suit in federal court. The district court held

---

[*] District Judge of the Eastern District of Louisiana, sitting by designation.

No. 14-10052

that Reliance Standard did not abuse its discretion in finding that Killen could perform sedentary work, and granted summary judgment to Reliance Standard. For the reasons discussed herein, we AFFIRM.

## I.      Factual and Procedural Background

Killen worked for Covenant from 2002 until March 2009, when she claimed that neck, shoulder and upper back pain made it too difficult for her to continue. Reliance Standard administered Covenant's long-term disability plan (the "Plan")—which is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*—and also paid benefits under the Plan if it found an employee disabled.

Killen collected benefits from June 2009 to June 2011. During this time, Killen separately qualified for Social Security disability benefits. To continue receiving benefits under the Plan after two years, a claimant must be "totally disabled" such that she is incapable of performing the material duties of *any* occupation for which she is qualified by way of education, training, or experience. Under the contract, an insured is totally disabled if "due to an Injury or Sickness he or she is capable of only performing the material duties on a part-time basis or part of the material duties on a Full-time basis."

At the outset, Killen's primary care physician—Dr. Steven Crow ("Dr. Crow")—treated her. Dr. Crow treated Killen on over twenty separate occasions over the next four years and addressed a variety of maladies she experienced beginning in late 2008. In August 2010, Killen seriously injured her right shoulder by exacerbating an apparently pre-existing tear in the rotator cuff. Dr. Crow found in September 2010 that Killen "had severe pain in the shoulder since that time," and that she was experiencing "[s]hooting pain towards her neck." Shortly thereafter, Dr. Crow referred her to Dr. Kevin Crawford ("Dr. Crawford"), an orthopedic surgeon who determined in October 2010 that Killen had a "high-grade full-thickness rotator cuff tear" in her right

2

shoulder. The tear was further corroborated by a radiologist's report. In a follow-up appointment in January 2011, however, Dr. Crawford found that Killen's "function is good, even though she has some discomfort."

In May 2011, Reliance Standard's internal vocational staff—evaluating the reports outlined above after Killen requested continued benefits—performed a residual employability analysis and listed five sedentary occupations appropriate for Killen. Consequently, Reliance Standard determined that, while Killen could no longer work as an ultrasound technician, she "appear[ed] capable of sedentary work activity." Reliance Standard thereafter decided to discontinue Killen's benefits.

This first denial apparently crossed in the mail with additional documents Killen sent to Reliance Standard, among them a treatment report from Dr. Crow and a letter from Dr. Crawford. Dr. Crow's letter noted Killen's "severe anxiety." Dr. Crawford's June 2011 letter, however, is the subject of dispute by the parties and is ambiguous about Killen's condition. He wrote that Killen was "reasonably functional despite the findings on MRI," but elaborated that "[w]hen I say functional, I mean that she still can get by with activities of daily living and can get her hand to her mouth and fix the back of her hair to some extent." Reliance Standard evaluated these additional documents apparently as a courtesy; it would otherwise have had to open up a more probing internal appeal. The company again denied continued coverage.

Subsequently, through her attorney, Killen filed an internal appeal with Reliance Standard, relying on an August 2011 letter from Dr. Crow that repeatedly emphasized how she was "incapable of holding down a job" due to her medical issues. At Reliance Standard's urging, she submitted to an in-person evaluation and independent review conducted in February 2012 by Dr. Mary Burgesser ("Dr. Burgesser"), a physical medicine and rehabilitation specialist. Dr. Burgesser, while crediting Killen's chronic, irreparable right

shoulder pain and acknowledging Dr. Crawford's diagnosis, concluded in a detailed report that the injury did not prevent her from performing sedentary work. A subsequent (second) residual employability analysis conducted in March 2012 by Reliance Standard, this time taking into account Dr. Burgesser's report, came to a similar conclusion as the first: Killen was capable of performing sedentary work in at least three alternative occupations. Relying on these reports, Reliance Standard denied Killen's appeal in March 2012. In its letter, Reliance Standard noted that Killen had been receiving disability benefits from the Social Security Administration ("SSA")—benefits which offset Reliance Standard's own obligations to Killen—but explained that the SSA may have used a different standard in evaluating benefits decisions and also did not have Dr. Burgesser's report when it awarded Killen benefits.

Nearly four months later, Killen sought to supplement the record with a letter from Dr. Crow adhering to the contents of his August 2011 letter: he still believed, he wrote, that Killen was "unable to work due to her medical issues." Reliance Standard responded, notifying Killen that it had closed her file and would not supplement it with the letter.

After Killen exhausted her administrative appeals, she filed suit in August 2012 in federal court under 29 U.S.C. § 1132(a)(1)(B). In December 2013, the district court granted summary judgment to Reliance Standard.

Killen timely appealed, arguing that Reliance Standard: (1) lacked substantial evidence supporting its denial; (2) failed to give Killen a full and fair review of her claim; (3); issued a decision tainted by a conflict of interest because it both administers and pays benefits; and (4) inappropriately refused to allow Killen to introduce the letter from Dr. Crow after it made a final decision to terminate her benefits.

No. 14-10052

## II.    <u>Standard of Review</u>

Review of summary judgment decisions in the ERISA context is de novo, and we apply the same standard as the district court. *Schexnayder v. Hartford Life & Accident Ins. Co.*, 600 F.3d 465, 468 (5th Cir. 2010).  Because the Plan gave Reliance Standard discretion to determine benefit eligibility as well as to construe the Plan's terms, the court reviews Reliance Standard's denial under the Plan for abuse of discretion. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 246 (5th Cir. 2009). "A plan administrator abuses its discretion where the decision is not based on evidence, even if disputable, that clearly supports the basis for its denial." *Holland*, 576 F.3d at 246 (internal quotation marks and citations omitted).  "If the plan fiduciary's decision is supported by substantial evidence and is not arbitrary and capricious, it must prevail." *Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004).

Killen argues in her briefs repeatedly that the summary judgment standard requires that the evidence and inferences drawn from that evidence be viewed in the light most favorable to her since she is the nonmovant.  She points to cases reciting the boilerplate language of the summary judgment standard.  However, she misapprehends the nature of appellate review of summary judgment decisions on ERISA benefits cases where the plan at issue vests discretion, as this one does, in a plan administrator.[1]  In that case, "[t]he fact that the evidence is disputable will not invalidate the decision; the evidence need only assure that the administrator's decision fall [sic] somewhere on the continuum of reasonableness—even if on the low end."

---

[1] The parties do not dispute that the Plan vests discretionary authority with Reliance Standard.  The Plan states that Reliance Standard "has the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits."

5

No. 14-10052

*Porter v. Lowe's Cos., Inc.'s Bus. Travel Acc. Ins. Plan*, 731 F.3d 360, 363–64 (5th Cir. 2013) (internal quotation marks and citation omitted).

The case on which Killen primarily relies, *Baker v. Metropolitan Life Ins. Co.*, 364 F.3d 624 (5th Cir. 2004), is inapposite. While *Baker* does explain that appellate courts review district court decisions in the ERISA context de novo and draw all inferences in favor of the nonmovant, *id.* at 627–28, Killen's selective citation to the case leaves out *Baker*'s later clarification: "when an administrator has discretionary authority with respect to the decision at issue, the standard of review should be one of abuse of discretion." *Id.* at 627. A court must "give deference to the decision of the plan administrator and may not substitute its judgment for the decision of the fiduciary." 1A Couch on Ins. § 7:59 (3d ed. 2014).

### III.   Discussion

#### A.

Killen first challenges the district court's finding that substantial evidence supported the plan's denial of benefits. Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted). Killen claims that the Plan language requires Reliance Standard to show that she can perform all of the job duties of a sedentary vocation on a full-time basis before discontinuing benefits. While it might have shown she could perform sedentary work, she argues, Reliance Standard never showed she could do so full time. Additionally, she claims the district court misconstrued the medical evidence and ignored objective documentation of her pain.

"[M]ost disputed claims for disability insurance benefits are awash in a sea of medical evidence, often of contradictory nature," 10A Couch on Ins. § 147:33, and this case is no different. Indeed, counsel for Killen admitted as

much at oral argument.  Courts frequently hear cases, like this one, where the plaintiff's own treating physicians generally support a finding of disability and the defendant's vocational specialists and independent medical examiners disagree.

In *Holland*, for example, a former paper machine specialist who had experienced a heart attack sought long-term disability benefits.  *See* 576 F.3d at 243. The Plan's language closely tracked the applicable language in this case.  *See id.* at 244.  The employee's primary care physician equivocated, but supported a finding of total disability, and a specialist's statements about his health were ambiguous: the specialist noted that the plaintiff had serious airway damage, but was improving.  *Id.*  The administrator had a third and fourth doctor conduct a paper review of the medical records, and a fifth doctor conducted a physical examination: all three agreed that the employee was not totally disabled.  *See id.* at 244–45.  The administrator never consulted a vocational expert.  *Id.* at 249.  The internal claim for benefits was denied twice. This court held that there had been no abuse of discretion; the existence of contradictory evidence, the court noted, "does not . . . make the administrator's decision arbitrary.  Indeed, the job of weighing valid, conflicting professional medical opinions is not the job of the courts; that job has been given to the administrators of ERISA plans."  *Id.* at 250 (internal quotation marks and citation omitted); *accord Wade v. Hewlett-Packard Dev. Co.*, 493 F.3d 533, 540–41 (5th Cir. 2007), *abrogated on other grounds by Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242 (2010) (upholding a denial of benefits where plaintiff's two treating physicians supported a disability finding but an examining neurophysiologist in a separate assessment found otherwise).[2]

---

[2] There is no obligation to weigh treating physicians' opinions any differently than those of other doctors or specialists.  The Supreme Court recently clarified that "courts have

No. 14-10052

When we find an abuse of discretion, the discrepancies between the facts and the administrator's findings are often stark. In *Lain v. UNUM Life Ins. Co. of Am.*, a claimant had experienced serious chest pains and esophageal problems documented by multiple treating physicians. *See* 279 F.3d 337, 340–42 (5th Cir. 2002), *overruled on other grounds by Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 115–19 (2008). Based on two internal reviews of the claimant's medical files—one of which seemed to actually substantiate the individual's complaints—and without an independent physical examination,[3] the administrator denied benefits. *See id.* at 341–42. This court found an abuse of discretion, noting that there was a "complete absence in the record of any 'concrete evidence' supporting [the administrator's] determination." *Id.* at 347.

In this case, substantial evidence supported Reliance Standard's decision to deny long-term disability benefits to Killen. While there is evidence in the record to support Killen's claim for disability—which the district court recognized—there is also more than enough evidence supporting a denial to insulate the decision from reversal, particularly under our narrow review for abuse of discretion.

First, Reliance Standard's vocational expert and examining physician provided sufficient evidence—including evidence of Killen's ability to perform full-time sedentary work—to justify the denial. A vocational expert employed by Reliance Standard identified between three and five sedentary jobs Killen could perform. Additionally, Dr. Burgesser wrote in her report that Killen was

---

no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003).

[3] ERISA does not mandate an independent medical examination prior to a denial. *See, e.g., Hobson v. Metro. Life Ins. Co.*, 574 F.3d 75, 91 & n.3 (2d Cir. 2009) (collecting cases).

No. 14-10052

"capable of performing at a sedentary work capacity . . . . The sedentary work would involve sitting most of the time and walking or standing for brief periods." On a separate form, Dr. Burgesser listed a series of activities that Killen could perform "on a regular basis in an 8-hour workday." The form noted that Killen could sit "frequent[ly]," and that she could "occasional[ly]" stand, walk, climb stairs, and drive. Contrary to Killen's position that Reliance Standard never showed she could perform full-time work, these findings—taken together—demonstrate that Killen could perform full-time work.

Second, Killen's own treating physicians equivocated at different times about the extent of her disability, even after the rotator cuff tear. Though her primary care physician ultimately concluded that she was totally disabled, her orthopedic surgeon's reports are ambiguous at best on the issue. Indeed, in a follow-up appointment to address her right shoulder rotator cuff tear, he stated that her "function is good, even though she has some discomfort."

The evidence in this case is comparable to that presented in *Holland* and *Wade*. In both of those cases—as in this one—there were conflicting medical opinions, with the plaintiffs' treating physicians generally supportive of a finding of disability and the defendants' internal reviews or independent examining physicians determining otherwise. *See Holland*, 576 F.3d at 244–45; *Wade*, 493 F.3d at 535–37. As the district court here acknowledged, it is the role of the ERISA administrator, not the reviewing court, to weigh valid medical opinions. *See Holland*, 576 F.3d at 250; *Wade*, 493 F.3d at 541. And unlike in *Lain*, it cannot be said in this case that there is a "complete absence in the record of any 'concrete evidence'" supporting a denial. *Lain*, 279 F.3d at 347. Reliance Standard's decision was supported by substantial evidence.[4]

---

[4] Killen argues also that some of the district court's discussion of statements she made to her physicians—for example, telling Dr. Crow that she wanted to get on disability—

No. 14-10052

## B.

Killen next argues that Reliance Standard failed to provide a full and fair review of her claim because (1) the company did not provide sufficient evidence in support of its initial May 2011 denial of benefits and (2) the company brought forward its strongest evidence of Killen's continued ability to perform full-time sedentary work during the final appeal without giving her a meaningful opportunity to respond.[5]

When denying claims, ERISA-covered employee benefit plans must: (1) provide adequate notice; (2) in writing; (3) setting forth the specific reasons for such denial; (4) written in a manner calculated to be understood by the participant; and (5) afford a reasonable opportunity for a full and fair review by the administrator. *Wade*, 493 F.3d at 540 (citing 29 U.S.C. § 1133).

Killen's first argument is foreclosed by our decision in *Wade*. In *Wade*, the administrator failed to comply even with the basic requirements of § 1133 during its initial internal review. While we found that the administrator's errors at least arguably reflected a failure to substantially comply with ERISA and its accompanying regulations, we stated that "[t]he statute and regulations do not require compliance with Section 1133 *at each and every level*

---

improperly contributed to its substantial evidence finding.  Killen is correct that some of these statements are not especially germane to the substantial evidence inquiry, but the district court's mere mention of those details, particularly in light of its recognition of the importance of the opinions of Dr. Burgesser and the vocational analyst to Reliance Standard's denial, does not disturb our holding that substantial evidence supported the denial.  Killen's argument that neither Reliance Standard nor the district court considered the objective reports of her pain are also belied by the record.  Both the district court and Reliance Standard's independent medical examiner acknowledged Killen's pain.

[5] Killen, in her briefing, alternatively characterizes these alleged ERISA violations as "procedurally unreasonable."  But the doctrine of procedural unreasonableness is a "separate concept that is a subset of our conflict of interest analysis."  *Truitt v. Unum Life Ins. Co. of Am.*, 729 F.3d 497, 509 n.4 (5th Cir. 2013).

10

of review of a Plan's internal claims processing," and found that the claimant had been provided a full and fair review.  *See id.*

Here, by contrast, Reliance Standard substantially complied with ERISA at every step, including its initial denial.  In its May 2011 initial written denial, Reliance Standard addressed: (1) medical records about Killen's right shoulder injury, crediting her right rotator cuff tear but highlighting Dr. Crawford's observation that her function was "good even though you have discomfort"; (2) the myriad medical issues—unrelated to the right shoulder problem—that Killen experienced, including those related to her neck and shoulder pain, heart problems, and depression; and (3) the internal vocational rehabilitation specialist's finding based on submitted records that "while unable to work in your normal occupation, you appear capable of sedentary work activity." Killen's view that these findings do not permit the inference that she could perform full-time sedentary work takes too narrow a view of the evidence.

Killen also argues that Reliance Standard unfairly brought forward its strongest evidence—the independent medical examiner's report—only in the final stage of her appeal, thereby preventing her from engaging in the "meaningful dialogue" contemplated by § 1133.  *See Lafleur v. La. Health Serv. & Indem. Co.*, 563 F.3d 148, 154 (5th Cir. 2009).

Circuits that have addressed the issue have generally determined that ERISA does not guarantee claimants an opportunity to rebut an independent medical examination report generated during an appeal prior to a denial of benefits.  *See Metzger v. UNUM Life Ins. Co. of Am.*, 476 F.3d 1161, 1167 (10th Cir. 2007) (holding that ERISA and its implementing regulations do "not require a plan administrator to provide a claimant with access to the medical opinion reports of appeal-level reviewers prior to a final decision on appeal"); *see also Pettaway v. Teachers Ins. & Annuity Ass'n of Am.*, 644 F.3d 427, 436 (D.C. Cir. 2011) (same); *Midgett v. Washington Grp. Int'l Long Term Disability*

No. 14-10052

*Plan*, 561 F.3d 887, 895–96 (8th Cir. 2009) (same); *Glazer v. Reliance Standard Life Ins. Co.*, 524 F.3d 1241, 1245–46 (11th Cir. 2008) (same).

Citing *Metzger*, this court in an unpublished opinion adopted a similar stance. *Shedrick v. Marriott Int'l, Inc.*, 500 F. App'x 331, 339 (5th Cir. 2012) ("Further, there does not appear to be relevant case law or regulations for the proposition that Aetna violated ERISA's full and fair review requirement by failing to consider evidence submitted after [the claimant's] appeal was closed or by not allowing [the claimant] to rebut the report by Dr. Wallquist.").

Killen does not dispute the force of this precedent. Rather, she contends that it is inapplicable where the first-stage denial did not provide evidence that she could call into question. But here, even assuming *arguendo* that Reliance Standard did not provide Killen with sufficient evidence justifying the initial denial for her to rebut, the underlying justification for each denial remained constant. Each letter rejected Killen's claim for benefits on the same ground: her ability to perform sedentary work. This takes the facts out of our line of cases where the insurer impermissibly uses a "bait-and-switch" tactic, providing one justification at the first stage and then, during the review, changing the grounds for the denial. *See, e.g.*, *Rossi v. Precision Drilling Oilfield Servs. Corp. Emp. Benefits Plan*, 704 F.3d 362, 366 (5th Cir. 2013); *Robinson v. Aetna Life Ins. Co.*, 443 F.3d 389, 394 (5th Cir. 2006) ("Aetna's shifting justification for its decision and failure to identify its vocational expert meant that Robinson was unable to challenge Aetna's information or to obtain meaningful review of the reason his benefits were terminated.").

While the information provided in Dr. Burgesser's report might have further bolstered Reliance Standard's position, there was nothing in the report that altered the company's original position. Therefore, Killen was not "sandbagged" by a report containing unanticipated factual findings. She was on notice beginning with the initial May 2011 denial that she needed to bring

No. 14-10052

forward evidence of her inability to perform sedentary work. Reliance Standard provided her an adequate opportunity to do so.

### C.

We turn to Killen's argument that Reliance Standard's decision was "procedurally unreasonable"—that is, that the company's conflict of interest as both the administrator of the Plan and the payor of benefits tainted its denial—because of its failure to adequately distinguish the SSA's disability finding.

The Supreme Court has held that a "plan administrator [who] both evaluates claims for benefits and pays benefits claims," as Reliance Standard does here, has a conflict of interest. *See Glenn*, 554 U.S. at 112. But the Court purposefully avoided enunciating a precise standard for evaluation of the impact of the conflict. *See id* at 119. In *Glenn*, and in a post-*Glenn* case in this court with similar facts, *Schexnayder*, the defendant-administrators denied disability benefits, but not before the claimants successfully applied for disability benefits before the SSA. *See Glenn*, 554 U.S. at 118; *Schexnayder* 600 F.3d at 471. The administrators financially benefitted from those decisions (payments from the SSA offset their own obligations) and then ignored the agency's findings of total disability entirely; the result was a reversal of those benefits decisions. *See Glenn*, 554 U.S. at 118; *Schexnayder* 600 F.3d at 471.

Here, by contrast, Reliance Standard twice addressed the SSA benefits awarded to Killen, once distinguishing its denial in detail. *Compare Schexnayder*, 600 F.3d at 471 n.3 ("It is the lack of *any* acknowledgement which leads us to conclude that Hartford's decision was procedurally unreasonable."). We find no procedural unreasonableness on these facts suggesting that we should accord the conflict of interest factor any special weight.

13

No. 14-10052

**D.**

Killen's final argument is that Reliance Standard improperly failed to allow her to supplement the administrative record with a letter from Dr. Crow submitted four months after the third denial.

When assessing factual questions in benefits cases, "a long line of Fifth Circuit cases stands for the proposition that . . . the district court is constrained to the evidence before the plan administrator." *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 299 (5th Cir. 1999) (collecting cases), *overruled on other grounds by Glenn*, 554 U.S. at 112. Before filing suit, "the claimant's lawyer can add additional evidence to the administrative record simply by submitting it to the administrator in a manner that gives the administrator a fair opportunity to consider it." *Id.* at 300. Such a "fair opportunity" must come in time for the administrator to "reconsider his decision." *Id.*

Here, the file was already closed and Killen had exhausted two internal appeals. We cannot say that such a late submission of evidence, only four weeks before Killen filed suit, gave Reliance Standard the "fair opportunity" contemplated by *Vega*. Although Dr. Crow rebuts Dr. Burgesser's opinion directly in the letter, he does so by repeating a position he had already taken. Indeed, he explained in the supplemental letter that "nothing has really changed in her condition." The letter, therefore, would not have changed the outcome here. *Cf. Keele v. JP Morgan Chase Long Term Disability Plan*, 221 F. App'x 316, 320 (5th Cir. 2007) ("We need not decide this question of *Vega*'s precise requirements today, because we conclude that the documents in dispute do not change the disposition of the case."). We decline to find an abuse of discretion in Reliance Standard's decision not to supplement the record, and we find no fault in the district court's choice not to consider the letter.

14

No. 14-10052

## IV.     <u>Conclusion</u>

For the foregoing reasons, we AFFIRM the district court's decision granting summary judgment to Reliance Standard on the ground that it did not abuse its discretion in denying Killen long-term disability benefits.