**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**February 21, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

SARAH E. METZGER,

      Plaintiff - Appellant,

v.

UNUM LIFE INSURANCE
COMPANY OF AMERICA,

      Defendant - Appellee.

No. 06-3064

---

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 02-CV-1321-MLB)**

---

Jack R. Shelton, Wichita, Kansas, for the Plaintiff-Appellant.

Morris J. Nunn, Stinson, Morrison, & Hecker, Kansas City, Missouri, for the
Defendant-Appellee.

---

Before **LUCERO**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and **EBEL**,
Circuit Judge.

---

**LUCERO**, Circuit Judge.

---

Sarah Metzger participated in a long-term disability plan ("the Plan")

sponsored by her employer, Twin Lakes National Bank, and administered by UNUM

Life Insurance Company of America ("UNUM"). The Plan is subject to the

Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq. After UNUM denied Metzger's claim for benefits and affirmed denial in a subsequent administrative appeal, Metzger sought relief in federal district court under ERISA's civil enforcement provision, 29 U.S.C. § 1132(a)(1). She challenges both UNUM's appeal procedures and its substantive denial of her claim. We first address whether UNUM violated 29 C.F.R. § 2560.503-1(h)(2)(iii) by failing to make reviewers' reports available prior to a final decision on appeal, then consider Metzger's substantive claim. We conclude that the district court properly granted summary judgment to UNUM on both claims, and **AFFIRM**.

## I

From October 1989 until April 2002, Metzger worked as a loan secretary at Twin Lakes National Bank. Her duties, which included filing, typing, and answering telephone calls, required her to walk intermittently throughout the day. In April 2002, Metzger filed a claim for long-term disability benefits with UNUM. Under the terms of the Plan, Metzger was required to show that she was both "under the regular care of a doctor" and "limited from performing the material and substantial duties of [her] regular occupation due to sickness or injury."

On the "Claimant's Statement" form provided by UNUM, Metzger described her disability as "type 2 Diabetes & a muscle disorder." She averred that she had difficulty walking and was unable to lift things. In addition to her own statement, Metzger submitted several items in support of her claim. Her family doctor, Dr. E.J.

Hett, completed an "Attending Physician's Statement," which listed a diagnosis of Diabetes II, polymyositis, hypertension, depression, and carpal tunnel syndrome. Metzger also submitted two documents from her neurologist, Dr. D.H. Abbas: (1) an August 2000 consultation report indicating that Metzger had "[m]uscle weakness, most likely secondary to myopathy, etiology to be determined"; and (2) a September 2000 electromyography test result, in which Dr. Abbas concluded that Metzger's muscle tissue suggested "mild myopathic changes in both deltoids." Metzger further included the results of a November 2000 biopsy of her left deltoid muscle, which described her muscle sample as "consistent with an inflammatory myopathy" but noted that "the sample is inadequate to further define the nature of the inflammation." Finally, Metzger submitted a one-page letter from her husband's psychiatric consultant, stating that Metzger might be required to take a leave of absence to care for her husband, who had severe psychiatric problems.

After receiving Metzger's claim, UNUM requested office notes from both Dr. Hett and Dr. Abbas. UNUM sent these notes and Metzger's other claim materials to Kim Brothers, a clinical consultant. Brothers noted that Metzger's electromyography tests suggested only "mild changes" and that her muscle biopsy "did indicate inflammatory myopathy . . . but could not define the natre [sic] of inflammation." She concluded that "it does not appear that [Metzger] is receiving care from a physician for a condition that would impair her ability to work." UNUM forwarded Brothers' review to Dr. Nancy Beecher, who summarily commented: "Agree with

-3-

above. No change in [status] or finding at DOD. It appears that there may be non medical issues impacting her decision to stop work." Based on these assessments, UNUM denied Metzger's claim. In its formal decision letter, UNUM gave two reasons for denial: (1) Metzger did not appear to be under the regular care of a doctor; and (2) she was not disabled within the meaning of the Plan.

Metzger timely filed an administrative appeal and submitted additional materials to UNUM, including a letter from Dr. Hett and a statement of her own. Dr. Hett's letter explained that "[b]ecause [Metzger's] condition of both the arthritis and myositis is chronic in nature and slowly progressive, [he] did not find it necessary to evaluate her on a frequent basis, but [had] talked with her informally at various opportunities [while examining] other family members." Dr. Hett also reemphasized Metzger's weakened muscle tone and limited mobility, concluding that Metzger "should discontinue working to provide the opportunity for her to regain strength." Metzger's own statement detailed her difficulties coping with daily life and functioning in the workplace, but included no medical evidence.

UNUM sent Metzger's complete file for review to two medical professionals, Registered Nurse Sheri Hess and Dr. Fluter, neither of whom had been involved in the original denial. In their medical reports, both Hess and Dr. Fluter concluded that denial was warranted and determined that Dr. Hett's second letter did not provide objective medical information sufficient to undermine UNUM's initial decision. Although the reports analyzed Metzger's medical evidence, they contained no new

-4-

factual information and recommended denial on the same grounds as the initial claim determination. On July 22, 2002, UNUM sent a letter notifying Metzger of its decision to uphold the denial of her claim. UNUM did not allow Metzger to view Hess' or Dr. Fluter's reports until after the final decision on appeal.

Metzger filed suit in federal district court seeking judicial review of the adverse decision. Her complaint challenged UNUM's denial on both substantive and procedural grounds, arguing that UNUM had improperly denied her claim and failed to provide a "full and fair" administrative review. Metzger contended that full and fair review necessarily entailed an opportunity to respond to the opinions of Hess and Dr. Fluter during the course of her administrative appeal.

Both parties filed cross motions for summary judgment. In March 2004, the district court issued a Memorandum and Order granting and denying each motion in part. It rejected Metzger's substantive claim, holding that "the evidence before UNUM, or rather the lack thereof, was more than sufficient" to support denial of the claim. However, it decided the procedural issue in favor of Metzger on the basis that UNUM had denied her a "full and fair review," and remanded "so as to allow Metzger an opportunity to respond to the opinions of Hess and Dr. Fluter."

Pursuant to the remand order, Metzger submitted additional materials to UNUM for a second administrative appeal. UNUM sent these new materials and the rest of Metzger's file to a board-certified physician, Dr. Hill, and a vocational consultant for yet another review. Both reviewers concluded that denial of the claim

-5-

was appropriate, and on June 21, 2004, UNUM again denied Metzger's appeal. Although Metzger's counsel requested that UNUM provide copies of any new expert reports prior to its final decision, UNUM did not furnish the assessments of Dr. Hill or the vocational consultant until after it denied her second appeal.

On August 4, 2004, Metzger filed a Motion for Order to Show Cause against UNUM in the district court, arguing that UNUM had violated the court's prior order by again relying on consultants' opinions without providing Metzger an opportunity to respond. The court determined that it lacked jurisdiction to entertain the motion because its 2004 Memorandum and Order was a final order. Metzger then appealed to this court. We declined to consider whether the 2004 order was final, and instead held that a district court has ancillary jurisdiction to enforce its orders and judgments even when final. Metzger v. UNUM Life Ins. Co. of America, 151 F. App'x 648, 652 (10th Cir. 2005) (unpublished). We thus remanded the case to the district court with instructions to consider Metzger's Motion for Order to Show Cause. Id.

On remand, the district court determined that its prior 2004 Memorandum and Order had incorrectly held that UNUM's review procedures failed to provide "full and fair" review. In a January 2006 Memorandum and Order, the district court amended its holding on the procedural issue, this time ruling in favor of UNUM, and denied Metzger's motion. Having previously settled Metzger's substantive claim in favor of UNUM, the court dismissed the case. Metzger timely appealed.

**II**

We initially consider whether we have jurisdiction to address Metzger's

appeal. In denying the Motion for Order to Show Cause, the district court effectively

amended its 2004 Memorandum and Order, which had previously decided the

procedural issue in favor of Metzger. Although the district court had earlier

determined that its 2004 order was final, we ultimately hold that the order was

interlocutory.

We analyze the finality of an ERISA remand order, such as the 2004 order, "on

a case-by-case basis applying well-settled principles governing final decisions."

Rekstad v. First Bank System, Inc., 238 F.3d 1259, 1263 (10th Cir. 2001) (quotation

omitted). In Rekstad, we compared ERISA cases to the administrative law context, in

which "a remand order is 'generally considered a nonfinal decision . . . not subject to

immediate review in the court of appeals.'" Id. at 1262 (quoting Baca-Prieto v.

Guigni, 95 F.3d 1006, 1008 (10th Cir. 1996)) (omission in original). Unless an order

meets the requirements of our "practical finality rule," we generally deem the order

non-final for purposes of our review. Id. (quotation omitted). Under that rule, an

order is final only if finality is "necessary to ensure that the court of appeals [is] able

to review an important legal question which the remand made effectively

unreviewable." Id. (quotations omitted).[1]

---

[1] Circuit courts have split over whether an order remanding a matter to an ERISA plan administrator is final. The First, Sixth, and Eleventh Circuits have held that such orders are non-final. See Bowers v. Sheet Metal Workers' Nat'l Pension

(continued...)

In the context of this case, the 2004 Memorandum and Order clearly did not render the legal question of ERISA procedures "effectively unreviewable." On remand, UNUM re-evaluated Metzger's claim and employed identical appellate procedures in denying her claim for benefits. Metzger again challenged these procedures in her Motion for Order to Show Cause, and UNUM responded to her motion. Had the district court granted Metzger's motion and ultimately awarded the relief prayed for in that motion, UNUM would have had the opportunity to appeal the award against it to this court. Instead, the district court denied the motion, and Metzger now appeals. Viewing the 2004 Memorandum and Order in light of this procedural history, and employing the case-by-case approach mandated by Rekstad, we conclude that the order was interlocutory.

Because the court had neither issued a final judgment disposing of all issues in the case nor certified the partial grant of summary judgment as a final order under Federal Rule of Civil Procedure 54(b), it had jurisdiction to amend its 2004 order in

_____

(...continued)
Fund, 365 F.3d 535, 537 (6th Cir. 2004); Petralia v. AT&T Global Info. Solutions Co., 114 F.3d 352, 354 (1st Cir. 1997); Shannon v. Jack Eckerd Corp., 55 F.3d 561, 563 (11th Cir. 1995). The Seventh Circuit, however, considers ERISA remand orders to be final and appealable. See Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan, 195 F.3d 975, 977-80 (7th Cir. 1999). In Hensley v. N.W. Permanente P.C. Ret. Plan & Trust, the Ninth Circuit employed an approach similar to our "practical finality rule" and held that an ERISA remand order is final when "appellate jurisdiction is necessary to ensure proper review of an important legal question which a remand may make effectively unreviewable." 258 F.3d 986, 994 (9th Cir. 2001) (overruled on other grounds by Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 966 (9th Cir. 2006)).

its January 2006 decision.   See Lindsey v. Dayton-Hudson Corp., 592 F.2d 1118, 1121 (10th Cir. 1979) ("Until final decree the court always retains jurisdiction to modify or rescind a prior interlocutory order.").  Moreover, because the January 2006 decision resolved all of Metzger's claims and dismissed the case in its entirety, that order is final for purposes of our review.  Accordingly, we have jurisdiction under 28 U.S.C. § 1291 to hear Metzger's current appeal.

**III**

Metzger contends that UNUM's administrative appeal procedures failed to provide her with the "full and fair review" required by ERISA and its accompanying regulations.  Specifically, she argues that UNUM violated 29 C.F.R. § 2560.503-1(h)(2)(iii) by failing to allow her to review and rebut its consultants' reports prior to its final decision on administrative appeal.  The district court ultimately rejected this argument in its January 2006 order.

We review a district court's interpretation of federal regulations de novo, applying general rules of statutory construction and starting with the plain language of the regulation.  Time Warner Entm't Co. v. Everest Midwest Licensee, L.L.C., 381 F.3d 1039, 1050 (10th Cir. 2004).  Subsection (h)(2)(iii) of the regulations requires an administrator on appeal to:

> Provide . . . upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits. Whether a document, record, or other information is relevant to a claim for benefits shall be determined by reference to paragraph (m)(8) of this section.

29 C.F.R. § 2560.503-1(h)(2)(iii).  A document, record or other information shall be considered "relevant" if it was "relied upon in making the benefit determination" or "submitted, considered, or generated in the course of making the benefit determination."  29 C.F.R. § 2560.503-1(m)(8).

Both parties agree that subsections (i)(5) and (j)(3) of the regulations require UNUM to make Hess' and Dr. Fluter's reports available to Metzger upon conclusion of the administrative appeal process.  See 29 C.F.R.§ 2560.503-1(i)(5), (j)(3).  However, they disagree over whether Metzger is entitled to review and rebut those reports prior to UNUM's final decision on appeal.   Metzger contends that subsection (h)(2)(iii) provides this right.

However, the district court disagreed.  It determined that subsection (h)(2)(iii) requires a plan administrator to release only documents relied upon during the <u>initial benefit determination</u> prior to its final decision on appeal.  According to the court, documents generated during the <u>appeal process itself</u> need be made available only after the decision on appeal.  Because the reports of Hess and Dr. Fluter fall into the latter category of documents – those created during the appeal process – the court ruled that UNUM had no obligation to provide those reports to Metzger until after the conclusion of the administrative appeal.  This interpretation, the court reasoned, was "the only sensible reading" of subsection (h)(2)(iii) in light of other provisions of the regulations.  In particular, the court noted subsection (h)(3)(iii) requires that an

administrator, "in deciding an appeal of any adverse benefit determination that is based in whole or in part on a medical judgment, . . . consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment." 29 C.F.R. § 2560.503-1(h)(3)(iii). Because subsection (h)(3)(iii) mandates consultation with healthcare professionals, the district court viewed Metzger's position as untenable:

> If plaintiff were allowed to rebut the opinions of professionals consulted at [the administrative appeal] stage, then the layman claims administrator would once again be faced with the possibility of receiving new medical opinions and judgments from plaintiff's experts. Subparagraph (h)(3)(iii) specifically requires such evidence be evaluated by qualified healthcare professionals. . . . Thus, if read according to plaintiff's view, the regulations set up an endless loop of opinions rendered under (h)(3)(iii), followed by rebuttal from plaintiff's experts, followed by more opinions under (h)(3)(iii), and so on.

We agree with the court's reasoning. Permitting a claimant to receive and rebut medical opinion reports generated in the course of an administrative appeal – even when those reports contain no new factual information and deny benefits on the same basis as the initial decision – would set up an unnecessary cycle of submission, review, re-submission, and re-review. This would undoubtedly prolong the appeal process, which, under the regulations, should normally be completed within 45 days. 29 C.F.R. § 2560.503-1(i)(3)(i); see also Gilbertson v. Allied Signal, Inc., 328 F.3d 625, 635 (10th Cir. 2003) (stating that "deadlines play a crucial role" in ERISA administrative appeals). Moreover, such repeating cycles of review within a single appeal would unnecessarily increase cost of appeals. See Sandoval v. Aetna Life &

-11-

Cas. Ins. Co., 967 F.2d 377, 382 (10th Cir. 1992) (noting that Congress intended to minimize the costs of claims settlement by passing ERISA).[2]

The Department of Labor's ("Department") own description of the 2000 amendments cuts against Metzger's suggested construction of subsection (h)(2)(iii). In explaining its decision to adopt subsection (m)(8), the Department stated that it "believes that this specification of the scope of the required disclosure of 'relevant' documents will serve the interests of both claimants and plans by providing clarity as to plans' disclosure obligations, while providing claimants with adequate access to the information necessary to determine whether to pursue further appeal." ERISA Claims Procedure, 65 Fed. Reg. 70,246, 70,252 (Nov. 21, 2000) (emphasis added). Metzger's position – that claimants be given pre-decision access to relevant documents generated during the administrative appeal – would nullify the Department's explanation. Access to documents during the course of an administrative decision would not aid claimants in determining "whether to pursue

_____

[2] We do not mean to suggest that cost or timeliness should prevent an administrator from engaging in an in-depth review of claims that may have merit. A plan administrator may seek a 60-day extension for the appeal process if special circumstances require additional time for review. 29 C.F.R. § 2560.503-1(i)(1)(i). Moreover, we have previously held that a plan administrator's fiduciary obligation to "seek to get to the truth" of a claim may require it to conduct limited investigation or to request more information during the course of a benefit determination. See Gaither v. Aetna Life Ins. Co., 394 F.3d 792, 807-08 (10th Cir. 2004); see also Gilbertson, 328 F.3d at 636 (stating that an administrator can be in "substantial compliance" with ERISA regulations when review extends beyond stated deadlines if the administrator is engaged in "an ongoing productive evidence-gathering process in which the claimant is kept reasonably well-informed").

-12-

further appeal," because claimants would not yet know if they faced an adverse decision.

In light of the sum procedural requirements of 29 C.F.R. § 2560.503-1 and the Department's explanation of those regulations, we hold that subsection (h)(2)(iii) does not require a plan administrator to provide a claimant with access to the medical opinion reports of appeal-level reviewers prior to a final decision on appeal. Instead, the regulations mandate provision of relevant documents, including medical opinion reports, at two discrete stages of the administrative process. First, relevant documents generated or relied upon during the initial claims determination must be disclosed prior to or at the outset of an administrative appeal. See 29 C.F.R. § 2560.503-1(h)(2)(iii). Second, relevant documents generated during the administrative appeal – along with the claimant's file from the initial determination – must be disclosed after a final decision on appeal. See 29 C.F.R. § 2560.503-1(i)(5). So long as appeal-level reports analyze evidence already known to the claimant and contain no new factual information or novel diagnoses, this two-phase disclosure is consistent with "full and fair review."[3] See Sage v. Automation, Inc. Pension Plan

_____

[3] To our knowledge, no circuit court has addressed whether subsection (h)(2)(iii) requires an administrator to make documents generated in the course of an administrative appeal available to claimants prior to a final decision. However, in Abram v. Cargill, Inc., 395 F.3d 882 (8th Cir. 2005), the Eighth Circuit held that full and fair review requires an administrator to make appeal-level consultants' reports available to claimants during the course of an appeal. Id. at 866. Because Abram filed her claim in 2000, the most recent amendments to 29 C.F.R. § 2560.503-1 did not apply to her claim. See ERISA Claims Procedure, 66 Fed.

(continued...)

& Trust, 845 F.2d 885, 893-94 (10th Cir. 1988) (holding that a "full and fair review" under ERISA requires "knowing what evidence the decision-maker relied upon, having an opportunity to address the accuracy and reliability of the evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering his decision"); Gilbertson, 328 F.3d at 635 (stating that ERISA and its regulations contemplate a "meaningful dialogue" between plan administrators and claimants) (quotation omitted).[4]

Because UNUM acted in accordance with the regulations in providing Metzger with the reports of Hess and Dr. Fluter after its final decision on appeal, we **AFFIRM** the decision of the district court.

**IV**

---

(...continued)
Reg. 35,886 (July 9, 2001) (stating that 2000 amendments apply only to claims filed on or after July 1, 2002). Thus, the Abram court did not consider the potential for circularity of review, and we are not persuaded by its reasoning.

[4] Other provisions of the regulations allow claimants to engage in a meaningful appeal of an adverse determination. In notifying a claimant of its initial denial, a plan administrator must state both "[t]he specific reason or reasons for the adverse determination" and "[a] description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary." 29 C.F.R. § 2560.503-1(g). On appeal, the administrator must "take[] into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination." Id. § 2560.503-1(h)(2)(iv). Together, these requirements enable claimants to submit informed responses to the adverse decision and to engage in meaningful dialogue with the plan administrator.

Metzger also challenges the substantive denial of her disability claim, contending that substantial evidence did not support UNUM's conclusion that she was not under "regular care of a doctor." However, on appeal to this court, she neglects to challenge UNUM's second, independent ground for denial, which was affirmed by the district court: that she had not shown she was disabled as defined by the Plan. Metzger has thus waived her challenge to this second ground for denial. See Murrell v. Shalala, 43 F.3d 1388, 1389-90 (10th Cir. 1994). Because Metzger's claim can be legitimately denied for either reason, we necessarily **AFFIRM** the district court's grant of summary judgment to UNUM on her substantive claim.

**V**

**AFFIRMED**.