# United States Court of Appeals
## For the First Circuit

No. 20-1713

KAREN JETTE,

Plaintiff, Appellant,

v.

UNITED OF OMAHA LIFE INSURANCE COMPANY,

Defendant, Appellee,

PRETI, FLAHERTY, BELIVEAU & PACHIOS LLP
LONG TERM DISABILITY PLAN,

Defendant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Jennifer C. Boal, U.S. Magistrate Judge]

Before

Howard, Chief Judge,
Thompson, Circuit Judge,
and Arias-Marxuach, District Judge.*

Jonathan M. Feigenbaum, for appellant.
Brooks R. Magratten, with whom Pierce Atwood LLP was on brief,
for appellee.

---

* Of the District of Puerto Rico, sitting by designation.

November 10, 2021

**THOMPSON**, **Circuit Judge**.  Plaintiff-appellant Karen Jette ("Jette") participated in a long-term disability plan ("the Plan") sponsored by her employer, Preti, Flaherty, Beliveau & Pachios LLP.  Defendant-appellee United of Omaha Life Insurance Company ("United") funds the Plan and serves as the claim administrator.  The Plan is subject to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq.  After United terminated Jette's disability benefits, Jette filed for an internal appeal review.  While the internal appeal was pending, United hired a doctor to examine Jette.  The doctor then sent United a report of his findings.  Despite Jette's request, United did not give Jette a copy of the doctor's report or allow her to respond to the report.  United then upheld the termination of benefits, relying in part on the doctor's report.  Jette sought relief in federal district court under ERISA's civil enforcement provision, 29 U.S.C. § 1132(a)(1).  She alleged that, by failing to provide her with a copy of the doctor's report and an opportunity to respond to it prior to the final determination on appeal, United failed to provide her with the "full and fair review" required by ERISA and its implementing regulation. Additionally, she argued that United's decision to terminate her benefits was not supported by substantial evidence in the administrative record and thus should be overturned.  After the

-3-

parties filed cross-motions for summary judgment, the district court granted summary judgment for United, finding that United committed no procedural violation and that substantial evidence in the record supported United's termination of Jette's disability benefits. This appeal ensued. Because we find that United did not provide Jette a full and fair review of her claim, as required under the ERISA regulation, and that Jette was prejudiced by United's procedural violation, we vacate the entry of summary judgment and remand the case to the district court with instructions that it be remanded to United for a full and fair review of Jette's claim.

## I. **Background**

Jette worked as a legal assistant at Preti, Flaherty, Beliveau & Pachios LLP. Her duties, which included filing, typing, and handling case files, required her to sit "frequently to constantly with occasional or intermittent standing/walking."

Jette had a history of back problems. In June 2012, an MRI scan revealed congenital lumbar spinal stenosis and disc degenerative changes at L4-L5 and L5-S1, which caused her a great amount of leg and back pain. On November 30, 2012, after failing to respond to conservative treatment, Jette underwent spinal surgery. She spent several months recovering from the surgery and returned to work in February 2013. Between March and June 2013,

Dr. Wojciech Bulczynski, Jette's orthopedic surgeon, diagnosed her with mild radicular degenerative disease and lumbar degenerative disc disease. Jette left work again in early July 2013, when she re-injured her back. She received short-term disability benefits from July 19 through October 3, 2013, due to lower back pain. Jette then applied for long-term disability ("LTD") benefits under the Plan, asserting that she was unable to sit or stand for more than twenty minutes, or walk without extreme difficulty. Dr. Bulczynski stated in Jette's application for LTD benefits that she was limited due to lumbar degenerative disc disease to no prolonged sitting, standing, lifting, bending, or squatting.

The Plan provides LTD benefits to participants who are "prevented from performing at least one of the [m]aterial [d]uties of [their] [r]egular [o]ccupation" by an injury or sickness. Under the terms of the Plan, the ability to work on a full-time basis is considered one of the material duties of a participant's occupation.

Although United initially denied Jette LTD benefits, it eventually approved such benefits in May 2014, after Jette appealed the initial denial.[1] In its review of Jette's claim on appeal, United considered a report that Dr. Hyman Glick, an orthopedic

_____

[1] United approved the benefits with a retroactive effective date of October 3, 2013.

-5-

surgeon, prepared at United's request after reviewing Jette's medical records. In his report dated April 21, 2014, Dr. Glick recounted Jette's medical history, including her multiple visits to her treating physicians, diagnoses, several MRI scans and x-rays, physical therapy, cortisone injections, multiple prescription medicines (including opioids), her 2012 surgery, and a second spinal surgery that she underwent on November 8, 2013. Dr. Glick concluded that there were no "inconsistencies in diagnosis, treatment, and claimed restrictions and limitations," and that there was no "evidence of symptom magnification, exaggeration or secondary gain." He noted, however, that he had reviewed Jette's medical records up to December 17, 2013 and, at only six weeks out from the November 8 surgery, Jette was not at a "medical end result."

In early 2014,[2] although Jette's condition had improved somewhat after the second spinal surgery, she reported numbness in her legs and complained of pain "across the lumbosacral junction" despite taking opioids and a tranquilizing muscle-relaxing drug. She was advised to continue physical therapy and exercise. According to Dr. Bulczynski, she remained disabled from work.

---

[2] Jette's ailments during this time frame were not encompassed in United's review of Jette's claim on appeal.

In June 2014, Jette saw Dr. Marcus Yountz, a neurologist, and reported intermittent leg weakness and pain, which Dr. Yountz attributed to a likely chronic nerve injury and degenerative disc disease in the lumbar region. Between July and December 2014, Jette reported increasing back pain, numbness, and leg weakness to Dr. Bulczynski. An MRI scan revealed degenerative changes at the L3-L4 motion segment of her lumbar spine. Jette continued with her prescription medicines and got an epidural steroid injection and a sacro-iliac joint injection in December 2014. On January 8, 2015, she saw Dr. Bulczynski again and renewed her complaint of back pain radiating to the hips and legs. On February 4, 2015, Dr. Bulczynski completed a Physical Capacities Checklist for Jette (a form provided by United) in which he noted her limited ability to sit, stand, and walk, and concluded that she was unable to work.[3]

On May 26, 2015, Jette saw Dr. Yountz again. He found

---

[3] In its statement of the case, United suggests that this checklist cannot be attributed to Dr. Bulczynski because a physician's assistant signed it on his behalf. United provides no support for this assertion. See Pitochelli v. Comm'r of Soc. Sec., No. 6:20-CV-135-DCI, 2021 WL 825089, at *4 (M.D. Fla. Mar. 4, 2021) ("The Court does not accept this argument without any authority that stands for the proposition that an opinion does not belong to a physician if an assistant permissibly endorses it with the physician's name."). In any case, whether the form would be admissible or not does not affect our conclusion that the district court erred.

no significant signs of myelopathy[4] and concluded that it was "possible that [Jette] simply ha[d] [a] chronic injury from her prior lumbar spondylosis."[5]  Dr. Yountz noted that Jette "[was] stable but still ha[d] significant pain."

At United's request, on May 1, 2015, a nurse consultant reviewed Jette's file (presumably in the course of ordinary periodic reviews).  She agreed with Dr. Bulczynski's February 4 findings regarding Jette's restrictions and limitations but disagreed with his conclusion that she was unable to work.

United then hired a private investigation company to conduct a background investigation and surveillance on Jette.  As part of its services, the company investigated Jette's online activity and prepared a report dated May 29, 2015.  According to the report, Jette's Facebook profile indicated that she rides a motorcycle, works at a law firm in Boston, owns a shop named Andromeda's Alley, and is the Executive Director of Support Our

---

[4]  Myelopathy is "an injury to the spinal cord due to severe compression."  Johns Hopkins Medicine, https://www.hopkinsmedicine.org/health/conditions-and-diseases/myelopathy (last visited Nov. 7, 2021).

[5]  Lumbar spondylosis refers to "change[s] of the bones (vertebrae) and discs of the spine.  These changes are often called degenerative disc disease and osteoarthritis."  University of Michigan Health, https://www.uofmhealth.org/health-library/abr8401 (last visited Nov. 7, 2021).

Soldiers, Inc., a non-profit organization.[6] Her store's website indicated that the brick and mortar store closed in November 2014 due to Jette's declining health but that she continues to operate an online store. It also said that Jette is licensed to perform ministerial services.

The private investigation company conducted in-person surveillance on July 11, 2015, and reported that Jette was observed working at a motorcycle fundraiser at a local Veterans of Foreign Wars Post from around 7:00 a.m. to 4:00 p.m. According to the report, Jette registered motorcyclists for the event, alternating between walking, standing, and sitting in a lawn chair throughout the day. Jette usually used a cane and walked with a limp. The investigator did not document Jette sitting for an extended period.

As per the Plan, United required Jette to apply for Social Security Disability benefits. In June 2015, Jette was awarded Social Security Disability benefits retroactively to January 2014. She then notified United of the Social Security determination.

Dr. Nancy Heimonen, a consulting physician for United, conducted a medical review of Jette's file and penned a report on November 12, 2015, in which she concluded that Jette was able to

---

[6]  The internet postings were not timestamped.

work. In her report, Dr. Heimonen outlined information gathered from the online and in-person surveillance. According to Dr. Heimonen, the surveillance report indicated that Jette could alternate sitting, standing, and walking over a nine-hour period, contradicting the limitations outlined by Dr. Bulczynski in February. Further, Dr. Heimonen noted that the intensity of Jette's medical care had diminished, as at the time there had been only two medical appointments documented in 2015. Dr. Heimonen reached the following conclusion:

> Based on the currently available medical and file information there is no evidence to support that the insured would be unable to sustain full time primarily seated work capacity with the above documented [restrictions and limitations] (no lifting > 10# occasionally and up to 10# frequently; no bending, twisting, kneeling, crawling, climbing, squatting, or stooping) as long as she was able to use naturally occurring changes in occupational duties to make postural and position changes for comfort purposes and she works in an ergonomically appropriate environment.

The next day, Dr. Heimonen shared this conclusion with Dr. Bulczynski in a letter. Dr. Heimonen also shared the additional information United had gathered: Jette's participation in the July 11th event and her online statements indicating that she rides motorcycles, is licensed to perform ministerial services, and runs a non-profit. Dr. Heimonen's letter asked Dr. Bulczynski if he agreed with the following assessment:

> Although [Jette]'s complaints are not in dispute, based on the currently available medical and activity

information, it is my impression that she does not have a physically based medical condition that would preclude her ability to perform full time primarily seated work with occasional standing and walking with restrictions and limitations of no lifting >10# occasionally and up to 10# frequently; no bending, twisting, kneeling, crawling, climbing, squatting or stooping and as long as she was able to use naturally occurring changes in occupational duties to make postural and position changes for comfort purposes in an ergonomically appropriate environment.

Do you agree? Yes _____ No _____.

Dr. Bulczynski was asked to complete some follow-up questions if he disagreed with the statement. Dr. Bulczynski marked "Yes" on December 23, 2015, indicating he agreed with Dr. Heimonen's statement without providing any additional information.

United terminated Jette's LTD benefits effective January 15, 2016. In its letter notifying the termination of benefits, United provided an extensive list of documents on which it relied in reaching this conclusion, including "[o]bservation of activities" on July 11, 2015, medical review performed by Dr. Heimonen, letter to Dr. Bulczynski dated November 13, 2015, and Dr. Bulczynski's response dated December 23, 2015. The letter stated that "[b]ased on her paucity of ongoing medical care, and the activities documented by direct observation and internet postings, it is unclear what precludes [Jette] from performing her primarily seated occupational duties."[7]

---

[7] United's letter clarified that, although United

-11-

Jette appealed the termination of benefits on July 15, 2016. With her appeal, Jette submitted additional information, including updated medical records, affidavits from herself, a friend, her mother, and stepfather,[8] and a Patient's Personal Activities Assessment.[9] She pointed to the approval of her Social

acknowledged that Jette had been awarded Social Security Disability benefits, "[t]he information relied upon [by United] to reach [its] determination was not available to the Social Security Administration at the time their decision was made."

[8] In her affidavit, Jette stated that she "cannot perform [her] occupation at all, as [she is] unable to sit in one position, stand, stoop, bend, or walk for more than 20 minutes at a time and spend[s] much of [her] day laying down with [her] knees raised as this is the only position where [she] find[s] relief." She explained that she cannot do most household activities on her own and often relies on the assistance of her grandson, and that she uses a cane, walker, wheelchair, or service dog "to walk and/or stand." Further, Jette stated that she has not ridden a motorcycle in more than five years. Finally, she clarified that her non-profit work generally involves 1-2 hours of work per month and that it took her a week of complete rest to recover from the annual fundraiser of July 11, 2015.

The other affidavits were consistent with Jette's description of her condition, bolstering her statements that she is unable to sit upright for more than a few minutes and that she needs help around the house. The affidavits also stated that Jette struggled to recover from the fundraiser. Each person also contrasted Jette's current condition to her active lifestyle and high energy level prior to the onset of her back pain and surgeries.

[9] The Patient's Personal Activities Assessment contained much of the same information that she explained in the affidavit: that she could not remain in the same position for more than twenty minutes and had severe pain which inhibited her daily activities. Jette's long-time primary care physician, Dr. Henry D'Angelo, indicated the assessment accurately reflected her limitations.

Security Disability application as further support for her claim for LTD benefits. Lastly, Jette requested that United promptly disclose any new medical opinions generated during the appeal process and provide her thirty days to respond prior to upholding any adverse benefit determination so that she could have a "full and fair review" of her claim.

United responded to Jette's appeal letter on July 21, 2016. In its response, United stated that it was "not required to provide [Jette] with a copy of a medical or vocational consultant's report prior to making an appeal decision on the claim." In United's view, "ERISA regulations require[d] [it] to provide re[lev]ant claim information prior to an appeal, and after [its] decision on appeal is rendered, but not during the appeal process." Accordingly, United "w[ould] not . . . provide a copy of a consultant's report for [Jette's] review prior to [its] appeal decision."

As part of the appeal, United required Jette to complete an in-person independent medical examination with Dr. Donald Thomson, a board-certified neurologist, which she did on September 21, 2016. He then produced a report for United on October 6, 2016, based on his evaluation of Jette and his review of her medical records. In his report, Dr. Thomson stated that Jette's history, examination, medical records, and MRI scans "are consistent with

-13-

the diagnoses of lumbosacral spondylosis." He noted that Jette complained of constant low back pain, which sometimes radiated into her leg, and that the pain was worsened by prolonged periods of sitting. Dr. Thomson further noted that Jette would stand and walk for pain relief after five to ten minutes of sitting during the examination, and that she "ha[d] difficulty taking off and putting on her socks," but concluded that "[s]eated activities with occasional standing and walking is permitted." He opined that Jette "[was] able to drive an automobile, but should be limited to short distances because prolonged sitting aggravates her back pain."

When asked if he agreed with the restrictions and limitations provided by the attending physicians, Dr. Thomson noted that he agreed with the restrictions advised by Dr. Bulczynski on December 23, 2015.[10] Dr. Thomson found no signs of "symptom magnification, lack of full effort, inconsistent findings, or malingering." He concluded that Jette's "documented activities outside of work" were "consistent with her reported impairments" and that, overall, her reported symptoms, "claimed restrictions and limitations" were consistent with his own

---

[10] The restrictions advised by Dr. Bulczynski on December 23, 2015 are, in reality, the restrictions advised by Dr. Heimonen; Dr. Bulczynski merely checked that he agreed with Dr. Heimonen's restrictions.

findings.  Dr. Thomson did not opine specifically on whether Jette could handle the duties of her job on a full-time basis.

On October 18, 2016, United upheld its termination of Jette's LTD benefits.  In its letter notifying Jette of its decision, United focused on Dr. Thomson's conclusion that Jette "would be able to perform seated activities with occasional standing and walking" and that she was able to drive an automobile, although only for short distances.  United noted that, "[d]riving is a physically and cognitively demanding activity that requires essentially full function of the spine and for an automatic transmission, three extremities.  An individual must have preserved response times and grip strength and must be able to tolerate sitting."

United also focused on Dr. Bulczynski's December 23, 2015 response "agree[ing] that Ms. Jette . . . did not have a . . . condition that would preclude her from performing full-time . . . primarily seated" work.  It also noted that Jette was the Executive Director of a non-profit organization, operated an online store, and was licensed to perform ministerial services.  According to United, the medical documentation, activities, and Dr. Thomson's examination findings supported its determination that Jette could perform her regular occupation.  After upholding the termination of her LTD benefits, United provided Jette with a copy of Dr.

-15-

Thomson's report.

In August 2018, Jette filed this action in the United States District Court for the District of Massachusetts seeking reinstatement of her LTD benefits and recovery of attorney's fees under ERISA.  Both Jette and United cross-moved for summary judgment.  Jette argued that, by failing to provide her with a copy of Dr. Thomson's report and an opportunity to respond to it prior to the final determination on appeal, United incurred a procedural violation and did not afford her a full and fair review of her claim.  She further argued that United's decision to terminate her LTD benefits was not supported by substantial evidence in the administrative record and thus should be overturned.  For its part, and consistent with its position during the internal appeal process, United contended that it had afforded Jette a full and fair review of her claim because, under the ERISA regulation applicable to Jette's claim,[11] it had no obligation to

---

[11]  The Department of Labor first issued a regulation governing claims procedures for employee benefit plans under its ERISA section 503 authority in May 1977.  See Claims Procedure for Employee Benefit Plans, 42 Fed. Reg. 27,426 (May 27, 1977) (codified at 29 C.F.R. § 2560.503-1).  The Department of Labor issued a revised claims-procedure regulation in November 2000, which applied to claims filed on or after January 1, 2002.  See Employee Retirement Income Security Act of 1974; Rules and Regulations for Administration and Enforcement; Claims Procedure, 65 Fed. Reg. 70,246 (Nov. 21, 2000).  Although the Department of Labor revised again the claims-procedure regulation in December 2016, see Claims Procedure for Plans Providing Disability Benefits, 81 Fed. Reg. 92,316 (Dec. 19, 2016), the parties agree

disclose Dr. Thomson's report prior to its final determination on appeal.  Additionally, United posited that its decision to uphold the termination of Jette's LTD benefits was supported by substantial evidence in the record.  The district court agreed with United, finding that United had committed no procedural violation by failing to disclose Dr. Thomson's report prior to a final determination on appeal.  See Jette v. United of Omaha Life Ins. Co., 467 F. Supp. 3d 3, 19-20 (D. Mass. 2020).  It determined that "an insurer does not have a duty under ERISA's 'full and fair' review requirement to disclose IME [(independent medical examination)] reports prior to making their decisions unless the insurer relies on the unshared IME report to find a new reason to deny coverage."[12]  Id. at 19.  Here, in the court's view, United's decision on appeal was consistent with its initial decision to terminate LTD benefits: "that Jette's functional limitations did

that because Jette's claim was filed in 2013, it is governed by the 2002 Regulation.

[12]  The district court noted that "[i]n December 2016, the Department of Labor amended the relevant regulation[] to require claim administrators to provide any new or additional evidence considered prior to rendering a final determination," but concluded that said requirement "was not in effect at the time that United rendered its final decision on October 18, 2016 upholding the termination of LTD benefits."  Jette, 467 F. Supp. 3d at 20 n.6.

-17-

not preclude sedentary work." Id. at 20. The district court concluded that, because "United did not use Dr. Thomson's report to find new reasons to deny Jette's claim," she had no right to review the report before United made a final determination on appeal. Id. Additionally, the court found that substantial evidence in the record supported United's termination of Jette's LTD benefits. Id. at 15-19.

## II. Discussion

Jette contends that United's internal appeal procedure failed to provide her with the "full and fair review" required by ERISA and its implementing regulation. Specifically, she argues that United violated 29 C.F.R. § 2560.503-1(h) by failing to allow her to review and rebut Dr. Thomson's report prior to its final decision on administrative appeal.

We review a district court's interpretation of federal regulations de novo, applying general rules of statutory construction and starting with the plain language of the regulation. See United States v. Strong, 724 F.3d 51, 55 (1st Cir. 2013) ("We review statutory and regulatory interpretations de novo."); Morales v. Sociedad Española de Auxilio Mutuo y Beneficencia, 524 F.3d 54, 57 (1st Cir. 2008) ("Determining a regulation's meaning requires application of the same principles that imbue exercises in statutory construction.").

Congress enacted ERISA "to promote the interests of employees and their beneficiaries in employee benefit plans." Merit Constr. All. v. City of Quincy, 759 F.3d 122, 127-28 (1st Cir. 2014) (quoting Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 90 (1983)).  To accomplish this goal, section 503 of ERISA establishes minimum procedural requirements that govern how an ERISA plan processes claims for health and disability benefits.  29 U.S.C. § 1133; see also Halo v. Yale Health Plan, Dir. of Benefits & Recs. Yale Univ., 819 F.3d 42, 48-49 (2d Cir. 2016).  It provides, in relevant part, that "any [plan] participant whose claim for benefits has been denied" must be afforded a "full and fair review" of the decision denying the claim, "[i]n accordance with regulations of the Secretary [of Labor]."  29 U.S.C. § 1133(2).

Consistent with Congress's delegation of authority in section 503, the Department of Labor promulgated a claims-procedure regulation for ERISA benefit plans.  29 C.F.R. § 2560.503-1.  Subsection (h) of the regulation governs the "[a]ppeal of adverse benefit determinations."  Id. § 2560.503-1(h).  It requires the establishment and maintenance of "a procedure by which a claimant shall have a reasonable opportunity to appeal an adverse benefit determination . . . and under which there will be a full and fair review of the claim and the adverse benefit determination."  Id. § 2560.503-1(h)(1).  The regulation

-19-

further states that in order to satisfy this requirement of providing a "full and fair review of a claim and adverse benefit determination," the claimant must be provided, "upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits." Id. § 2560.503-1(h)(2)(iii). "A document, record, or other information shall be considered 'relevant' to a claimant's claim" if it was "relied upon in making the benefit determination" or was "submitted, considered, or generated in the course of making the benefit determination." Id. § 2560.503-1(m)(8)(i)-(ii).

In addition, as part of the review process, a claimant must also be provided an "opportunity to submit written comments, documents, records, and other information relating to the claim for benefits." Id. § 2560.503-1(h)(2)(ii). The review on appeal must "take[] into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination." Id. § 2560.503-1(h)(2)(iv). These requirements apply to plans providing disability benefits. Id. § 2560.503-1(h)(4).

The parties disagree over whether Jette was entitled to review and rebut Dr. Thomson's report prior to United's final decision on appeal. Jette contends that subsections (h)(2)(ii)

and (iii) of the regulation provide these rights. United, in contrast, posits that subsection (h)(2)(iii)'s disclosure requirement applies only to those documents relevant to the initial adverse benefit determination. Under United's interpretation, the documents generated during the review process, such as Dr. Thomson's report, have to be disclosed only after a final determination on review is reached. According to United, because Jette had no right to review Dr. Thomson's report during the pendency of the appeal, it follows that she did not have a right to rebut it either. The district court offered yet another reading of subsection (h)(2)(iii). In the district court's view, under subsection (h)(2)(iii), a claimant must be provided with a copy of a document generated during the appeal process prior to a final determination on review only if "the insurer relies on the unshared [document] to find a new reason to deny coverage." Jette, 467 F. Supp. 3d at 19. We turn to the language of the regulation. See In re Fin. Oversight & Mgmt. Bd. for P.R., 919 F.3d 121, 128 (1st Cir. 2019) ("[I]n resolving a dispute over the meaning of a statute, we begin with the language of the statute itself. We first determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." (internal quotation marks and citations omitted)).

The plain language of subsection (h)(2)(iii) provides for a full and fair review of the "claim and adverse benefit determination," in which the claimant is provided all documents "relevant" to his or her "claim for benefit." 29 C.F.R. § 2560.503-1(h)(2)(iii). Relying on out-of-circuit cases, United submits that the "relevant" documents that subsection (h)(2)(iii) refers to are limited to those used to make the initial benefit determination.

We reject United's invitation to narrowly construe the language of subsection (h)(2)(iii). The plain language of subsection (h)(2)(iii) does not limit the documents to be produced to those relevant to the initial benefit determination, but rather unambiguously requires that "all documents . . . relevant to the claimant's claim for benefits" be provided to the claimant. 29 C.F.R. § 2560.503-1(h)(2)(iii) (emphasis added). The initial benefit determination is merely one event that occurs within a claim for benefits. Indeed, the regulation provides that the plan's "benefit determination on review" must occur within an allotted timeframe unless "special circumstances . . . require an extension of time for processing the claim," which demonstrates that the administrative appeal is part of the claim process. Id. § 2560.503-1(i)(1)(i) (emphasis added). And United makes no argument that the term "claim" refers to anything other than the

request for benefits under the Plan. Furthermore, we note that the Department of Labor used the terms "claim for benefits," "adverse benefit determination," and "initial benefit determination" throughout the regulation to refer to different things. See, e.g., 29 C.F.R. §§ 2560.503-1(h)(1), (h)(2), and (h)(4) (providing for a full and fair review not only of the "adverse benefit determination" but also of the "claim," reflecting that the terms refer to different things); id. § 2560.503-1(h)(2)(iv) (stating that the review on appeal should take into account "all comments, documents, records, and other information submitted by the claimant relating to the claim" regardless of "whether such information was submitted or considered in the initial benefit determination" (emphasis added)). This makes manifest that, despite knowing how to use the terms "initial benefit determination" and "adverse benefit determination" when it drafted the regulation, the Department of Labor consciously chose to require that the documents to be produced under subsection (h)(2)(iii) include all those relevant to the "claim." We will thus respect that choice and construe the regulation in light of its chosen "language . . . , the specific context in which that language is used, and the broader context of the statute as a whole." In re Fin. Oversight & Mgmt. Bd. for P.R., 919 F.3d at 128 (quoting Robinson v. Shell Oil Co., 519 U.S.

-23-

337, 341 (1997)). Those definitions are clear: "relevant" documents require a nexus to a "benefit determination," not an "adverse" or "initial" benefit determination. We know that a benefit determination, when used in an unqualified and general sense, encompasses the determination on appeal because the regulation separately provides that "the plan administrator shall notify a claimant . . . of the plan's benefit determination on review within a reasonable period of time . . . after receipt of the claimant's request for review by the plan." 29 C.F.R. § 2560.503-1(i)(1)(i) (emphasis added); see also id. § 2560.503-1(i)(3)(i) (same for disability claims). In an administrative appeal, a plan is not simply reviewing the initial, adverse benefit determination, but engaging in its own "benefit determination . . . [that] is required to be made," id. § 2560.503-1(i)(4), or "benefit determination [that] shall be rendered," id. §§ 2560.503-1(i)(1)(ii), (i)(3)(ii), which may or may not be "adverse," id. § 2560.503-1(j).

Nor does subsection (h)(2)(iii)'s language support the district court's interpretation that documents generated during the internal appeal process must be provided to the claimant prior to a final determination on review only if "the insurer relies on the[m] . . . to find a new reason to deny coverage."[13] Jette, 467

---

[13] The district court relied on Killen v. Reliance Standard

F. Supp. 3d at 19.  The regulation establishes no such condition.

To the contrary, under the regulation, a document is "relevant"

and thus must be disclosed to the claimant under subsection

(h)(2)(iii) not only if it "[w]as relied upon in making a benefit

determination," but also if it "[w]as submitted, considered, or

generated in the course of making the benefit determination,"

regardless of whether it "was relied upon in making the benefit

determination."  29 C.F.R. § 2560.503-1(m)(8)(i)-(ii).

"The purpose of [the 'full and fair review'] requirement

is to provide claimants with enough information to prepare

---

Life Ins. Co., 776 F.3d 303, 310-11 (5th Cir. 2015) and DiGregorio v. Hartford Comprehensive Emp. Benefit Serv. Co., 423 F.3d 6, 16 (1st Cir. 2005), to support its theory.  However, these cases are either unpersuasive or inapposite.  In Killen, in addressing the claimant's contention that she had not received a full and fair review of her claim because the plan administrator did not provide her with a copy of the independent examiner's report obtained during the internal appeal process, the Fifth Circuit did not analyze the ERISA regulation.  See 776 F.3d at 310-311.  In fact, the opinion does not even cite the regulation.  Id.  The only real discussion of the regulation can be found in decisions by other Circuits that Killen cites.  See id. (collecting cases). Furthermore, there is no indication in the opinion that the claimant had requested a copy of such report during the internal appeal process.  See 29 C.F.R. § 2560.503-1(h)(2)(iii) (stating that "all documents . . . relevant to the claimant's claim for benefits" must be provided to the claimant "upon request"). DiGregorio is inapposite.  DiGregorio did not interpret the 2002 Regulation at issue here; rather, it interpreted the 1977 Regulation.  See 423 F.3d at 14 n.4.  Furthermore, our review in DiGregorio was limited to the issue of prejudice allegedly suffered by the claimant due to the plan administrator's failure to disclose the entire claim file during the internal review process.  Id. at 13.

adequately for further administrative review or an appeal to the federal courts." Juliano v. Health Maint. Org. of N.J., Inc., 221 F.3d 279, 287 (2d Cir. 2000) (alteration in original) (quoting DuMond v. Centex Corp., 172 F.3d 618, 622 (8th Cir. 1999)). United's proposed reading, however, would frustrate this purpose. It would unreasonably prevent plan participants from responding to evidence, not only at the administrative stage, but also on judicial review, which is typically based on the administrative record. See Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 519-20 (1st Cir. 2005) (explaining that when the decision to which judicial review is addressed is the final ERISA administrative decision, judicial review is usually limited to the administrative record before the administrator). Furthermore, we have long recognized that claimants must be allowed to engage in a meaningful dialogue regarding the denial of benefits. See Glista v. Unum Life Ins. Co. of Am., 378 F.3d 113, 129 (1st Cir. 2004) (noting that the "administrators and beneficiaries [must] hav[e] a full and meaningful dialogue regarding the denial of benefits"). Claimants, however, would be precluded from engaging in this meaningful dialogue if the evidence is provided to them only after the final decision is rendered, when it is too late for them to respond.

According to the plain language of the regulation, upon

Jette's request for documents after the initial adverse determination, United had to disclose to Jette Dr. Thomson's report, which was relevant to her claim for LTD benefits regardless of whether it would be used to support a new reason to deny coverage. See 29 C.F.R. § 2560.503-1(h)(2)(iii). United then had to give her the opportunity to respond to the report by submitting written comments, documents, records, or other information relating to her claim that she deemed appropriate. See id. § 2560.503-1(h)(2)(ii). Finally, United's review on appeal had to take into account these new submissions. See id. § 2560.503-1(h)(2)(iv). By failing to do so, United deprived Jette of a full and fair review of her claim.

Our reading of the regulation is consistent with the Ninth Circuit's decision in Salomaa v. Honda Long Term Disability Plan, where the court held that the plan had denied a full and fair review to the claimant when it procured two consultant medical opinions but failed to disclose them to the claimant before denying his internal appeal. 642 F.3d 666, 680 (9th Cir. 2011) (so holding).[14]

---

[14] We acknowledge that some other Circuits have reached a different result, see Mayer v. Ringler Associates, Inc., 9 F.4th 78 (2d Cir. 2021); Midgett v. Wash. Group Int'l Long Term Disability Plan, 561 F.3d 887 (8th Cir. 2009); Glazer v. Reliance Standard Life Ins. Co., 524 F.3d 1241 (11th Cir. 2008); Metzger v. UNUM Life Ins. Co. of Am., 476 F.3d 1161 (10th Cir. 2007), but we do not find their reasonings persuasive. Mayer relies on the other

-27-

Jette argues that this reading is also consistent with the Department of Labor's longstanding position that claimants have a right to review and respond to new evidence or rationales

cases, 9 F.4th at 88, but does not address the contrary decision by the Ninth Circuit in Salomaa, 642 F.3d at 680. Mayer also reasons that there would have been no need to amend the 2002 regulation if that version already required disclosure. 9 F.4th at 88 n.5. But, as we observe, the Department of Labor has expressly stated that the amendment was not substantive but rather was clarifying. Midgett relies on an overly narrow reading of 29 C.F.R. § 2560.503-1(h) as applying only to initial benefit determinations, 561 F.3d at 894-95, which is inconsistent with the plain text of the regulation for the reasons we have explained. Glazer relies on the use of the past tense in § 2560.503-1(m)(8)(i)-(ii) to restrict relevant documents to those that were "relied upon" in prior benefit determinations, 524 F.3d at 1245, but it overlooks the fact that claimants may request any document that "[w]as submitted, considered, or generated in the course of making the benefit determination," that is, while a benefit determination is ongoing. 29 C.F.R. § 2560.503-1(m)(8)(ii). Glazer also concludes that reading the regulation to require the production of documents that were generated during an appeal before a final decision is rendered would make superfluous the separate requirement for the production of such documents after the appeal is settled. 524 F.3d at 1245 (citing 29 C.F.R. § 2560.503-1(i)(5)). This reasoning does not consider that claimants are only entitled to relevant documents "upon request," 29 C.F.R. §§ 2560.503-1(h)(2)(iii), (i)(5), (j)(3), so a claimant who did not request such documents while an appeal was pending could request them after an adverse decision, giving those provisions separate purposes and force. Finally, Metzger relies principally on policy considerations, as opposed to textual justifications, for its reading of the regulation. 476 F.3d at 1166-67. In any case, it limited its holding to the facts of the case, where the expert reports that were generated during the administrative appeal and that were not shared with the claimant "contain[ed] no new factual information and den[ied] benefits on the same basis as the initial decision." Id. at 1166. That was not the case here. See generally Hughes v. Hartford Life & Accident Ins. Co., 368 F. Supp. 3d 386 (D. Conn. 2019) (making substantially similar arguments).

developed by the plan during the pendency of the internal appeal. She posits that this has been the Secretary of Labor's interpretation, as reflected both in the Preamble of the 2018 Regulation and in the amicus curiae brief that the Secretary of Labor submitted in Midgett v. Wash. Group Int'l Long Term Disability Plan, 561 F.3d 887 (8th Cir. 2009), and that such interpretation is entitled to Auer deference. See Auer v. Robbins, 519 U.S. 452, 461-62 (1997).

The Preamble of the 2018 Regulation states that,

> The Department continues to believe that a full and fair review requires that claimants have a right to review and respond to new evidence or rationales developed by the plan during the pendency of the appeal and have the opportunity to fully and fairly present his or her case at the administrative appeal level, as opposed merely to having a right to review such information on request only after the claim has already been denied on appeal.

Claims Procedure for Plans Providing Disability Benefits, 81 Fed. Reg. 92,316, 92,324, 2016 WL 7326455 (Dec. 19, 2016) (emphasis added). It also states that 29 C.F.R. § 2560.503-1(h)(4) is amended to clarify that, contrary to what some circuit courts have held under the 2002 Regulation,[15] the plan must

> provide claimants, free of charge, with new or additional evidence considered, relied upon, or

---

[15] The Preamble specifically cited the cases of Midgett, 561 F.3d 887, Glazer, 524 F.3d 1241, and Metzger, 476 F.3d 1161 -- all of which United cited in support of its argument -- as examples of cases in which the 2002 Regulation had been incorrectly interpreted.

generated by the plan, insurer, or other person making the benefit determination (or at the direction of the plan, insurer or such other person) during the pendency of the appeal in connection with the claim. . . . It was and continues to be the view of the Department that claimants are deprived of a full and fair review, as required by section 503 of ERISA, when they are prevented from responding, at the administrative stage level, to all evidence and rationales.

Claims Procedure for Plans Providing Disability Benefits, 81 Fed. Reg. at 92,324-5 & n.17.

Jette further argues that the Brief of the Secretary of Labor, Hilda L. Solis, as Amicus Curiae in Support of Plaintiff-Appellant's Petition for Rehearing, Midgett, 561 F.3d 887 (No. 08-2523), 2009 WL 8186025, also reflects the Department of Labor's position. In that brief, the Secretary of Labor argued that ERISA "claimants are deprived of a full and fair review when claimants are prevented from responding at the administrative level to evidence developed by the plan" during the course of an administrative appeal, and invoked Auer deference to the Department's position. Id. at *5, 14.

United, however, argues that because the Preamble to the 2018 Regulation was published in December 2016, two months after United had rendered its final adverse benefit determination, "[it] cannot be expected to follow agency guidance published months after it completed its review." That may well have been the case were the Preamble the only departmental view that was published on the

matter.  See Christopher v. SmithKline Beecham Corp., 567 U.S. 142, 159 (2012) (finding Auer deference "unwarranted" where its application would "require regulated parties to divine the agency's interpretations in advance").  But the Department of Labor's interpretation of 29 C.F.R. § 2560.503-1(h) was not made known for the first time in December 2016.  The Department of Labor had interpreted the scope of subsection (h) of the 2002 Regulation since at least June 2009, when the Secretary of Labor submitted her amicus curiae brief in Midgett, 561 F.3d 887.  And, despite United's protest that such interpretation should not be afforded Auer deference because it was included in an amicus curiae brief, as opposed to something more "widely disseminated to the industry," the Supreme Court has afforded Auer deference to agencies' interpretations advanced for the first time in amicus curiae briefs filed in the very same cases being decided.  See, e.g., Auer, 519 U.S. at 461-62 (deferring to the Secretary of Labor's interpretation of his own regulation, presented in an amicus brief submitted by the agency, despite the petitioner's objection that the agency's interpretation came in a legal brief); see also Chase Bank USA v. McCoy, 562 U.S. 195, 209-10 (2011) (deferring to the Federal Reserve Board's interpretation of its own regulation under circumstances similar to those in Auer); United States v. Hoyts Cinemas Corp., 380 F.3d 558, 567 (1st Cir. 2004) (affording "some

weight" to the Justice Department's interpretation of its regulation "even though the Department's gloss is offered only in a brief rather than in some more formal manner").

Because the language in the 2002 Regulation is unambiguous, however, we do not resort to Auer deference. See Kisor v. Wilkie, 139 S. Ct. 2400, 2415 (2019) (explaining that "a court should not afford Auer deference unless the regulation is genuinely ambiguous"). We clarify, however, that if the 2002 Regulation had been genuinely ambiguous, we would have applied Auer deference to the Department of Labor's interpretation and would have reached the same result.[16]

Having concluded that United violated 29 C.F.R. § 2560.503-1(h) by failing to provide a full and fair review of Jette's claim, we next consider whether Jette was prejudiced by United's procedural violation. See Lavery v. Restoration Hardware Long Term Disability Benefits Plan, 937 F.3d 71, 82 (1st Cir. 2019) (noting that we typically require a claimant to show prejudice attributable to a procedural irregularity); Stephanie C. v. Blue

---

[16] We note that United made no arguments as to why Auer deference should not apply to the Department of Labor's interpretation of the 2002 Regulation in the amicus brief, other than because it was not widely disseminated to the industry. See Kisor, 139 S. Ct. at 2415-18 (discussing when an agency's reading of its rule should not receive Auer deference despite the rule's genuine ambiguity).

Cross Blue Shield of Mass., 813 F.3d 420, 425 (1st Cir. 2016) (same).

"Generally, where a district court has made a prejudice determination, our case law has treated it as a 'factual conclusion that we review only for clear error.'" Santana-Díaz v. Metro. Life Ins. Co., 816 F.3d 172, 182 (1st Cir. 2016) (quoting DiGregorio v. Hartford Comprehensive Emp. Benefit Serv. Co., 423 F.3d 6, 13, 15-16 (1st Cir. 2005)). However, "where the lower court has made no factual finding as to prejudice, and where one could be made on the basis of the administrative record before us, we have, without remanding, made our own prejudice determination." Id. Here, because the district court found no procedural violation, it did not reach the question of whether Jette was prejudiced because of the alleged procedural violation. A prejudice determination, however, can be easily made at this stage on the basis of the administrative record before us. See Bard v. Boston Shipping Ass'n, 471 F.3d 229, 241 n.15 (1st Cir. 2006) (holding, where the district court made no factual findings about prejudice and incorrectly found no material noncompliance by the plan's Board of Trustees, that there were "no relevant factual determinations to defer to" and, in any event, "it was clear error to hold that there was no 'material noncompliance by the Board' [of Trustees]"). The administrative record reveals that, after

-33-

examining Jette and reviewing her medical records, Dr. Thomson rendered a report in which, among other things, he agreed with the restrictions advised by Dr. Heimonen and concluded that Jette "[was] able to drive an automobile," although only for short distances. Jette claims that the evidence does not support Dr. Thomson's findings and conclusions, which she says were inherently inconsistent. Yet, she did not have the opportunity to review and respond to Dr. Thomson's report before United rendered its final determination on appeal. The record further reflects that United relied, at least in part, on Dr. Thomson's report to uphold its decision to terminate her LTD benefits. Its letter notifying Jette of its decision to uphold the termination of her LTD benefits focused on Dr. Thomson's conclusions that Jette "would be able to perform seated activities with occasional standing and walking" and that she was able to drive an automobile, and emphasized how "physically and cognitively demanding" driving is. In fact, the letter made clear that the decision to uphold the termination of benefits took into account "the medical documentation, activities, and [Dr. Thomson's] examination findings" (emphasis added). Accordingly, we find that Jette was prejudiced by United's procedural violation.

Jette also challenges the substantive termination of her LTD benefits, contending that there is no substantial evidence in

the administrative record to support that decision. Had Jette been afforded the full and fair review to which she was entitled, she would have been provided access to Dr. Thomson's report and, as she represents to us, would have responded to his report. Because Jette had no chance to review Dr. Thomson's report and respond to it, the record is incomplete. Accordingly, we will not review United's substantive decision at this time. Instead, we will allow her claim to go back to the administrative stage, where Jette will have the opportunity to "submit written comments, documents, records, and other information relating to [her] claim," 29 C.F.R. § 2560.503-1(h)(2)(ii), before United makes a new determination based on the thus supplemented record, id. § 2560.503-1(h)(2)(iv). See Buffonge v. Prudential Ins. Co. of Am., 426 F.3d 20, 31 (1st Cir. 2005) (noting that the "appropriate response" when the "integrity" of a claim administrator's "decision-making process" was compromised is to give the claimant the "benefit of an untainted process").

## III. Conclusion

In light of the above, we vacate the entry of summary judgment and remand to the district court with instructions that the case be remanded to United for a full and fair review of Jette's claim. Costs are awarded to the appellant.